**FILED**
US DISTRICT COURT
WESTERN DISTRICT
OF ARKANSAS

Sep 1, 2020

OFFICE OF THE CLERK

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | No. ___20-6094___ |
| | ) | |
| QUAPAW HOUSE, INC., | ) | |
| MALVERN NATIONAL BANK | ) | |
| Defendant | ) | |

## COMPLAINT

COMES NOW the United States of America ("United States"), by and through Acting United States Attorney David Clay Fowlkes and the undersigned Assistant United States Attorney, and hereby alleges as follows:

## INTRODUCTION

1.      This action arises from the transfer of real property located at 225 and 227 Hazel Street, Hot Springs, Arkansas ("the Property"), from the United States to Quapaw House, Inc. ("Quapaw House"). The United States transferred the Property to Quapaw House, the grantee, for a period of thirty (30) years upon the condition that the Property would be used continuously for health purposes in accordance with Quapaw House's approved program of utilization as set forth in its application dated July 3, 2002, amended on September 3, 2002, and for no other purpose. The health purpose specified in the approved application was care for the homeless. Quapaw House breached these conditions, entitling the United States to full possession of the Property. Accordingly, the United States brings this action seeking relief.

1

## JURISDICTION AND VENUE

2.     This Court has jurisdiction pursuant to 28 U.S.C. § 1345 because the United States is the Plaintiff and 28 U.S.C. § 2201 because this action seeks a Declaratory Judgment.

3.     Venue lies in this district pursuant to 28 U.S.C. § 139l(b)(l) because the Defendant resides in this district and pursuant to 28 U.S.C. § 139l(b)(2) because the Property at issue is located within this district.

## THE PARTIES

4.     Plaintiff is the United States.

5.     Defendant Quapaw House is a 26 U.S.C. § 50l(c)(3) charitable organization incorporated as an Arkansas non-profit corporation with the address of its principal place of business listed as 505 West Grand Avenue, Hot Springs, Arkansas 71913. Quapaw House was organized to, among other purposes, address the continued need for Health Care and Social Assistance - Social Assistance - Individual and Family Services (child, youth, elderly, disabled) in Hot Springs, Arkansas.

6.     Casey Bright was, at all relevant times described in this Complaint, the Chief Executive Officer and registered agent of Quapaw House.

7.     Pat Parker is the Chairman of the Board of Quapaw House.

8.     On April 28, 2020, Levi Hospital was appointed as receiver for Quapaw House. On June 24, 2020, Levi Hospital was relieved as receiver for Quapaw House. (*see* In the Circuit Court of Garland County, Arkansas, Case Number 26CV-20-377, Malvern National Bank v. Quapaw House, Inc., et al.)

## GENERAL ALLEGATIONS

9.     The General Services Administration ("GSA") is an agency of the United States that provides federal agencies with workplaces, goods, and services.

10.     The United States Department of Health and Human Services ("HHS") is a federal agency with the mission of protecting the health of all Americans and providing essential human services.

11.     Prior to September 3, 2003, the United States, through GSA, owned property identified as 225 and 227 Hazel Street in Hot Springs, Garland County, Arkansas (the "Property"). The property located at 225 and 227 Hazel Street, Hot Springs, Arkansas, consists of a 26,467 square foot lot with a 7,435 square foot building and parking lot.

12.     On or about September 3, 2003, the United States of America, through HHS, transferred the Property to Quapaw House, Inc., by Quitclaim Deed ("Deed").

13.     The Deed was recorded in the Garland County, Arkansas, Clerk's Office at Book 2328 and Page 0865. A true and accurate copy of the Deed is attached hereto as Exhibit A.

14.     The Property is more particularly described in the Deed as:

A tract of land in the County of Garland, State of Arkansas, to wit:

BEING a parcel of land located in Hot Springs, Garland County, Arkansas and being a part of Lot 2 of Whittington's Subdivision of Lot 12, Block 93 of the United States Hot Springs Reservation, as surveyed and platted by the United States Hot Springs Commissioners, said Parcel being the same land conveyed to Mrs. Ola Lambert by Warranty Deed No. (not numbered) recorded in Volume 259, Page 420 of the Warranty Deed records of Garland County, Hot Springs, Arkansas, and being more particularly described as follows:

BEGINNING at the Northwest corner of Lot 2 of Whittington's Subdivision of Lot 12, Block 93, of the United States Hot Springs Reservation: being S 42°30'E, a distance of 300.00 feet from the North corner of Block 93 of the United States Hot Springs Reservation; THENCE S 42°30'E with the South ROW line of Hazel Street a distance of 50.00 feet to an "X" in a brass capped monument set for corner in the North line of said Lot 2; THENCE S 47°23'W a distance of 157.20 feet to an "X" in a brass capped monument set for corner in the South line of Lot 2;

3

THENCE N 56°37'E with the South line of Lot 2 a distance of 51.00 feet to the Southwest corner of Lot 2; same point being the Southeast corner of Lot 11, Block 93;

THENCE N 47°13'E with the common line between Lots 2 and 11 a distance of 169.65 feet to the point of beginning and containing 8,132.37 square feet of land.  All bearings in this description are Magnetic and have a 6°30' deviation Easterly.

And

A Parcel of land located in Hot Springs, Garland County, Arkansas and being Lot 11, Block 93 of the Hot Springs Reservation, as surveyed and platted by the United States Hot Springs Commissioners.  SAVE and EXCEPT a 6.00 feet by 100.00 feet perpetual right of way easement granted to the Standard Ice Company by Anne L. Midnight by deed recorded in Volume 158, Page 444, Records of Deeds and Mortgages of Cameron County, Arkansas, said Parcel being the same land conveyed to Karel A. Janota by Warranty Deed No. 10929, recorded in Volume 511, Page 650 of the Warranty Deed Records of Garland County, Hot Springs, Arkansas, and being more particularly described as follows:

BEGINNING at a point on the South ROW line of Hazel Street and the North line of Lot 11, Block 93 of the United States Hot Springs Reservation.  The same point being the Northeast corner of a 6.00 feet by a 100.00 feet perpetual easement granted to the Standard Ice Company and being South 42°30' East 206.00 feet from the North corner of Block 93 at the intersection of the South ROW line of Hazel Street and the East ROW line of Ouachita Avenue;

THENCE South 42°30' East with the South ROW line of Hazel Street a distance of 94.00 feet to the Northeast corner of Lot 11, Block 93; same being the Northwest corner of Lot 2 of Whittington Subdivision of Lot 12, Block 93 of the United States Hot Springs Reservation;

THENCE South 47°13' West with the common line between Lots 11 and 2 a distance of 169.65 feet to the Southeast corner of said Lot 11;

THENCE North 56°37' West with the South line of Lot 11 a distance of 104.00 feet to an "X" in a brass capped monument set at the Southwest corner of Lot 11;

THENCE North 47°30' East with the West line of said Lot 11 a distance of 95.00 feet to a point for corner; said point being the Southwest corner of a 6.00 feet by 100.00 feet perpetual easement; thence South 42°30' East with the South line of said easement a distance of 6.00 feet to the Southeast corner of said easement.  Thence North 47°30' East with the East line of said easement a distance of 100.00 feet to the point of beginning and containing 17,714.40 square feet of land.  All bearings in this description are Magnetic and have a 6°30' deviation Easterly.

And

A Parcel of land located in Hot Springs, Garland County, Arkansas and being a part of Lot 11, Block 93 of the Hot Springs Reservation, as surveyed and platted by the United States Hot Springs Commissioners, and being more particularly described as follows:  BEGINNING at an "X" in a brass capped concrete monument set in the South ROW line of Hazel Street, at the Northwest corner of Lot 11, Block 93 of the United States Hot Springs Reservation, same being the Northwest corner of this Parcel, and being S 42°30'E, at a distance of 200.00 feet from the North corner of Block 93 at the intersection of the South ROW line of Hazel Street with the East ROW line of Ouachita Avenue;
THENCE S 42°30' E with the South ROW line of Hazel Street a distance of 6.00 feet to a point for corner
THENCE S 47°30' W a distance of 100.00 feet to a point for corner;
THENCE N 42°30' W a distance of 6.00 feet to a point for corner in the West line of Lot 11, Block 93;
THENCE N 47°30' E with the West line of said Lot 11 a distance of 100.00 feet to the point of beginning and containing 600.00 square feet of land.  All bearings in this description are Magnetic and have a 6°30' deviation Easterly.

Exhibit A at pp. 1-3.

15.     HHS transferred the Property to Quapaw House through the Federal Property and Administrative Services Act of 1949, 40 U.S.C. § 550, and regulations promulgated pursuant thereto at 45 C.F.R. Part 12, which, among other provisions, allows the transfer of property owned by the United States for the protection of public health, and the McKinney-Vento Homeless Assistance Act, 42 U.S.C. § 11411, and regulations promulgated pursuant thereto at 45 C.F.R. Part 12a, which, among other provisions, allows the use of public buildings and real property to assist the homeless.

16.     The Deed provides that the Property was subject to each of the following conditions subsequent, among others:

1) That for a period of thirty (30) years from the date hereof the Property herein conveyed will be used continuously for health purposes in accordance with Grantee's approved program of utilization as set forth in

its application dated the 3rd day of July 2002, amended on September 3, 2002, and for no other purpose;

2)  That during the aforesaid period of thirty (30) years Grantee will not resell, lease, mortgage, or encumber or otherwise dispose of any part of the Property or interest therein except as Grantor or its successor in function may authorize in writing;

3)  Where construction or major renovation is not required or proposed, the Property must be placed into use within twelve (12) months from the date of this Deed. Where construction or major renovation is contemplated at the time of transfer, the Property must be placed into use within thirty-six (36) months from the date of this Deed.

4)  That one year from the date hereof and annually thereafter for the aforesaid period of thirty (30) years, unless Grantor or its successor in function directs otherwise, Grantee will file with Grantor or its successor in function reports on the operation and maintenance of the Property and will furnish, as requested, such other pertinent data evidencing continuous use of the Property for the purposes specified in the above-identified application.

5)  That during the aforesaid period of thirty (30) years Grantee will at all times be and remain a tax-supported organization or a nonprofit institution, organization, or association exempt from taxation under section 50l(c)(3) of the Internal Revenue Code of 1986, as amended.

6)  That, for the period during which the Property is used for the purpose for which the Federal assistance is hereby extended by Grantor or for another purpose involving the provision of similar services or benefits, Grantee hereby agrees that it will comply with the requirements of section 606 of the Act (40 U.S.C. § 476); the Fair Housing Act (42 U.S.C. § 3601-19) and implementing regulations; and, as applicable, Executive Order 11063 (Equal Opportunity in Housing) and implementing regulations; Title VI of the Civil Rights Act of 1964 (42 U.S.C. § 2000d to d-4) (Nondiscrimination in Federally Assisted Programs) and implementing regulations; Title IX of the Education Amendments of 1972 (20 U.S.C. § 1681) and implementing regulations; the prohibitions against discrimination on the basis of age under the Age Discrimination Act of 1975 (42 U.S.C. § 6101-07) and implementing regulations; the prohibitions against otherwise qualified individuals with handicaps under Section 504 of the Rehabilitation Act of 1973 (29 U.S.C. § 794) and implementing regulations, and all requirements imposed by or pursuant to

the regulations of Grantor (45 CFR Parts 12, 80, 84, 86 and 91) issued pursuant to said Acts and now in effect, to the end that, in accordance with said Acts and regulations, no person in the United States shall, on the ground of race, color, national origin, sex, age, or handicap, be excluded from participation in, be denied the benefits of, or otherwise be subjected to discrimination under the program and plan referred to in condition numbered 1 above or under any other program or activity of Grantee, its successors or assigns, to which said Acts and regulations apply by reason of this conveyance.

Exhibit A at pp. 3-5.

17.    The "approved program of utilization as set forth in its application dated the 3rd day of July 2002, amended September 3, 2002," provided that the property to be continually used for the approved program - transitional living, including residential treatment services, and other services in the treatment of alcohol and substance abuse by homeless clients - for a period of 30 years. Under the terms of the Deed, Quapaw House was subject to all of the conditions, covenants, and other requirements contained in the Deed and legal authorities referenced therein.

**VIOLATION OF THE QUITCLAIM DEED CONDITIONS SUBSEQUENT**

18.    On October 25, 2019, Pat Parker, on behalf of Quapaw House, executed and conveyed to Malvern National Bank a mortgage, identified as loan number X7681, on the Property as well as 505 W. Grand Avenue, Hot Springs, Arkansas 71901. (see Exhibit B) That action was without permission of HHS and in violation of the terms and conditions contained in the Deed.

19.    On October 25, 2019, Pat Parker, on behalf of Quapaw House, executed and conveyed to Malvern National Bank a mortgage, identified as loan number X7592, on the Property as well as 505 W. Grand Avenue, Hot Springs, Arkansas 71901. (see Exhibit C) That

action was without permission of HHS and in violation of the terms and conditions contained in the Deed.

20.     On March 31, 2020, a third party contacted HHS alleging that the property was no longer in use. By email dated April 1, 2020, HHS asked Quapaw House, which confirmed that the property was still in use.  However, when HHS requested further information regarding services being provided on the property and relating to an IRS lien known to be placed on the property, Quapaw House failed to respond.

21.     On April 17, 2020, Malvern National Bank filed an Amended Complaint against Quapaw House seeking foreclosure on the two mortgages identified as loan number X7681 and loan number X7592, as well as other legal claims. (*see* In the Circuit Court of Garland County, Arkansas, Case Number 26CV-20-377, Malvern National Bank v. Quapaw House, Inc., et al.)

22.     Malvern National Bank did not make HHS or GSA a party in the aforementioned lawsuit despite the Quitclaim Deed filed in Garland County Office of the County Recorder which clearly states the reversionary interest of the United States.

23.     By email dated April 27, 2020, HHS sent a follow-up email to the grantee requesting the information and received no response.  On May 22, 2020, HHS sent yet another email stating that HHS could not reach Quapaw House by telephone and requested that Quapaw House contact HHS.

24.     After unsuccessful attempts to reach Quapaw House, on June 3, 2020 (via email and USPS overnight delivery) HHS sent a letter to Quapaw House advising of the violation of the deed and that HHS was moving forward with administrative action to remedy the noncompliance.  Quapaw House did not respond; rather Levi Hospital notified HHS it was appointed as Receiver to Quapaw House.

25.     By letter dated June 22, 2020, HHS notified Quapaw that it was in breach of conditions subsequent number 1 and 2 of the Quitclaim Deed and HHS was taking action to revert the property to the U.S. government. (see Exhibit D)

26.     Quapaw House has committed a substantial breach of conditions subsequent numbers 1 and 2 of the Deed and violated the terms of the Deed. (see Exhibit A at pp. 3-4).

27.     The Deed further states that:

> In the event of a breach of any of the conditions subsequent set forth above, whether caused by the legal or other inability of [Quapaw House], its successors and assigns, to perform any of the obligations herein set forth, [HHS] or its successor in function will, at its option, have an immediate right of reentry thereon, and to cause all right, title, and interest in and to the Property to revert to the United States of America, and [Quapaw House], its successors and assigns, shall forfeit all right, title, and interest in and to the Property and to any and all of the tenements, hereditaments, and appurtenances thereunto belonging;

Exhibit A at p. 5.

28.     The Deed further states that:

> PROVIDED, HOWEVER, that the failure of [HHS] or its successor in function to insist in any one or more instance upon complete performance of any of the said conditions subsequent shall not be construed as a waiver of or a relinquishment of the future performance of any of said conditions subsequent, but the obligations of [Quapaw House] with respect to such future performance shall continue in full force and effect;

Exhibit A at p. 5.

29.     The Deed further states that:

> In the event title to the Property or any part thereof is reverted to the United States of America for noncompliance ... [Quapaw House] ... shall be responsible for and shall be required to reimburse the United States of America for the decreased value thereof ... [and] ... [t]he United States of America shall ... be reimbursed for such damage, including such costs as may be incurred in recovering title to or

possession of the above-described property, as it may sustain as a result of such noncompliance.

Exhibit A at p. 7.

30.     On June 22, 2020, HHS notified Casey Bright, Director of Quapaw House, that Quapaw House had violated the terms of the Deed and the United States, and pursuant to the terms of the Deed, HHS would begin the process to exercise the right of reversion of the property to the United States.

## COUNT I
### (Reverter Because of Breach of Condition Subsequent)

31.     The United States realleges and incorporates by reference paragraphs 1 through 30 of this Complaint as though fully set forth herein.

32.     By reason of the conduct described herein, and pursuant to the terms and condition of the Deed and federal law, the United States has an automatic right of reentry to the Property and Defendant Quapaw House forfeited the Property to the United States of America.

33.     The United States has a substantial interest in enforcing the conditions subsequent contained in the Deed.

34.     Defendant Quapaw House breached a condition subsequent contained in the Deed.

35.     The United States provided Defendant Quapaw House with a written demand that possession of the Property be delivered to the United States, for violations of conditions subsequent contained in the Deed.

36.     Pursuant to the Deed, upon the breach of a condition subsequent, the United States has an immediate right of reentry and to take possession to the Property, and to cause all right, title, and interest in and to the Property to revert to the United States, and Defendant Quapaw

House, its successors and assigns, shall forfeit all right, title, and interest in and to the Property and to any and all of the tenements, hereditaments, and appurtenances thereunto belonging.

37.     The United States has the right to re-enter and take possession of the Property and to terminate Defendant Quapaw House's interest in the Property.

38.     Title to the Premises revested in the United States by operation of law upon Defendant Quapaw House's breach of the Deed conditions.

<u>**COUNT II**</u>
**(Ejectment Because of Breach of Condition Subsequent)**

39.     The United States realleges and incorporates by reference paragraphs 1 through 30 of this Complaint as though fully set forth herein.

40.     Defendant Quapaw House breached a condition subsequent contained in the Deed.

41.     As a result of Defendant Quapaw House's breach of a condition subsequent contained in the Deed, the United States is entitled to exclusive possession of the Property, and an order and judgment ejecting Defendant Quapaw House from the Property and Defendant Quapaw House shall retain no rights or interests in the Property.

<u>**COUNT III**</u>
**(Costs Because of Breach of Condition Subsequent)**

42.     The United States of America realleges and incorporates by reference paragraphs 1 through 30 of this Complaint as though fully set forth herein.

43.     Defendant Quapaw House breached a condition subsequent contained in the Deed.

44.     The Property may have decreased in value since being transferred to Defendant, Quapaw House.

45.     The United States has and will incur costs, fees, and damages in connection with exercising its rights under the Deed.

46.     As a result of Defendant Quapaw House's breach of a condition subsequent contained in the Deed, the United States is entitled to its fees, costs, and damages in an amount to be established.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff United States of America requests the following relief from the Court:

A.     An Order and Judgment declaring that the United States of America is vested with title to the Property, in fee simple free and clear of any liens, mortgages, or encumbrances;

B.     An Order and Judgment that the Clerk of Garland County, Arkansas, be directed to take such action to reflect that the United States of America is vested with absolute and unencumbered title, in fee simple to the Property;

C.     An Order and Judgment compelling Defendant Quapaw House to convey the Property to the United States of America and to execute and deliver an unencumbered deed to the Property to the United States of America;

D.     An Order and Judgment awarding the United States of America exclusive possession of the Property;

E.     An Order and Judgment ejecting Defendant Quapaw House, and any other entity or person not authorized by HHS and/or the United States, from possession of the Property;

F.      An Order and Judgment awarding the costs and disbursements of this

action; and

G.      Such other and further relief as the Court shall deem proper and just.


Respectfully Submitted,

DAVID CLAY FOWLKES
FIRST ASSISTANT U. S. ATTORNEY


By:  *Candace L. Taylor*

      Candace L. Taylor
Assistant U.S. Attorney
Ark. Bar Number 98083
414 Parker Avenue
Ft. Smith, AR  72901
Phone:  (479) 783-5125
Fax:  (479) 441-0569
Email:  candace.taylor@usdoj.gov

Contract No.  07-AR-2251

**QUITCLAIM DEED**

BOOK 2 3 2 8 PAGE 0 8 6 5

THIS INDENTURE, made this 3rd day of  September 2003, between the United States of America, acting through the Secretary of Health and Human Services, by the Director, Division of Property Management,  Program Support Center, U.S. Department of Health and Human Services (hereinafter referred to as "Grantor"), under and pursuant to the power and authority delegated by the Federal Property and Administrative Services Act of 1949 (40 U.S.C. § 484(k)), as amended  (hereinafter referred to as "the Act"), and regulations promulgated pursuant thereto at 45 C.F.R. Part 12,  and the McKinney-Vento  Homeless Assistance Act (42 U.S.C. § 11411),  as amended, and Quapaw House, Inc. (hereinafter referred to as "Grantee").

**WITNESSETH**

WHEREAS, by letter dated August 13, 2003, from the General Services Administration, certain surplus property consisting of **a 26,467 square foot lot**  more or less, hereinafter described (hereinafter referred to as "the Property"), was assigned to the Department of Health and Human Services for disposal upon the recommendation of the Grantor that the Property is needed for public health purposes in accordance with the provisions of the Act; and

WHEREAS, said Grantee has made a firm offer to purchase the Property under the provisions of the Act, has made application for a public benefit allowance, and proposes to use the Property in accordance with the approved program of utilization; and

WHEREAS, Grantor has accepted the offer of Grantee,

NOW,  THEREFORE, Grantor, for and in consideration of the foregoing and of the observance and performance by  Grantee of the covenants, considerations and restrictions hereinafter contained and other good and valuable consideration, the receipt of which is hereby acknowledged, has remised, released and quitclaimed and by these presents does remise, release and quitclaim to Grantee, its successors and assigns, all right, title, interest, claim and demand, excepting and reserving such rights as may arise from the operation of the conditions subsequent hereinafter expressed, which the United States of America has in and to the Property, situate, lying, and being in the County of Garland, State of Arkansas , and more particularly described as follows:

A tract of land in the County of Garland, State of Arkansas, to wit:
BEING a parcel of land located in Hot Springs, Garland, County, Arkansas and being a part of Lot 2 of Whittington's Subdivision of Lot 12, Block 93 of the United States Hot Springs Reservation, as surveyed and platted by the United States Hot Springs Commissioners, said Parcel being the same land conveyed to Mrs. Ola Lambert by Warranty Deed No. (not numbered) recorded in Volume 259, Page 420 of the Warranty

FILED FOR RECORD ON THE 30 DAY OF Sept 2003 AT 2:54
O'CLOCK M. VICKI E. RIMA, CLERK _____ D.C.

Exhibit A

BOOK 2328 PAGE 0866

Deed records of Garland County, Hot Springs, Arkansas, and being more particularly described as follows:

BEGINNING at the Northwest corner of Lot 2 of Whittington's Subdivision of Lot 12, Block 93, of the United States Hot Springs Reservation: being S 42°30'E, a distance of 300.00 feet from the North corner of Block 93 of the United States Hot Springs Reservation;
THENCE S 42°30'E with the South ROW line of Hazel Street a distance of 50.00 feet to an "X" in a brass capped monument set for corner in the North line of said Lot 2;
THENCE S 47°23'W a distance of 157:20 feet to an "X" in a brass capped monument set for corner in the South line of Lot 2;
THENCE N 56°37'E with the South line of Lot 2 a distance of 51.00 feet to the Southwest corner of Lot 2; same point being the Southeast corner of Lot 11, Block 93;
THENCE N 47°13'E with the common line between Lots 2 and 11 a distance of 169.65 feet to the point of beginning and containing 8,132.37 square feet of land. All bearings in this description are Magnetic and have a 6°30' deviation Easterly.

And

A Parcel of land located in Hot Springs, Garland County, Arkansas and being Lot 11, Block 93 of the Hot Springs Reservation, as surveyed and platted by the United States Hot Springs Commissioners. SAVE AND EXCEPT a 6.00 feet by 100.00 feet perpetual right of way easement granted to the Standard Ice Company by Anne L. Midnight by deed recorded in Volume 158, Page 444, Records of Deeds and Mortgages of Cameron County, Arkansas, said Parcel being the same land conveyed to Karel A. Janota by Warranty Deed No. 10929, recorded in Volume 511, Page 650 of the Warranty Deed Records of Garland County, Hot Springs, Arkansas, and being more particularly described as follows:

BEGINNING at a point on the South ROW line of Hazel Street and the North line of Lot 11, Block 93 of the United States Hot Springs Reservation. The same point being the Northeast corner of a 6.00 feet by 100.00 feet perpetual easement granted to the Standard Ice Company and being South 42°30' East 206.00 feet from the North corner of Block 93 at the intersection of the South ROW line of Hazel Street and the East ROW line of Ouachita Avenue;
THENCE South 42°30' East with the South ROW line of Hazel Street a distance of 94.00 feet to the Northeast corner of Lot 11, Block 93; same being the Northwest corner of Lot 2 of Whittington Subdivision of Lot 12, Block 93 of the United States Hot Springs Reservation;
THENCE South 47°13' West with the common line between Lots 11 and 2 a distance of 169.65 feet to the Southeast corner of said Lot 11;
THENCE North 56°37' West with the South line of Lot 11 a distance of 104.00 feet to an "X" in a brass capped monument set at the Southwest corner of Lot 11;

Exhibit A

BOOK 2328 PAGE 0867

THENCE North 47°30' East with the West line of said Lot 11 a distance of 95.00 feet to a point for corner; said point being the Southwest corner of a 6.00 feet by 100.00 feet perpetual easement; thence South 42°30' East with the South line of said easement a distance of 6.00 feet to the Southeast corner of said easement. Thence North 47°30' East with the East line of said easement a distance of 100.00 feet to the point of beginning and containing 17,714.40 square feet of land. All bearings in this description are Magnetic and have a 6°30' deviation Easterly

And

A Parcel of land located in Hot Springs, Garland County, Arkansas and being a part of Lot 11, Block 93 of the Hot Springs Reservation, as surveyed and platted by the United States Hot Springs Commissioners, and being more particularly described as follows: BEGINNING at an "X" in a brass capped concrete monument set in the South ROW line of Hazel Street, at the Northwest corner of Lot 11, Block 93 of the United States Hot Springs Reservation, same being the Northwest corner of this Parcel, and being S 42°30'E, at a distance of 200.00 feet from the North corner of Block 93 at the intersection of the South ROW line of Hazel Street with the East ROW line of Ouachita Avenue;
THENCE S 42°30' E with the South ROW line of Hazel Street a distance of 6.00 feet to a point for corner;
THENCE S 47°30' W a distance of 100.00 feet to a point for corner;
THENCE N 42°30' W a distance of 6.00 feet to a point for corner in the West line of Lot 11, Block 93;
THENCE N 47°30' E with the West line of said Lot 11 a distance of 100.00 feet to the point of beginning and containing 600.00, square feet of land. All bearings in this description are Magnetic and have a 6°30' deviation Easterly.

SUBJECT to any and all other existing easements, encumbrances, covenants, restrictions, reservations or conditions affecting the above described property whether or not the same appear on record.

The Grantee shall comply with all applicable Federal, State, municipal, and local laws, rules, orders, ordinances, and regulations in the occupation, use, and operation of the Property.

TO HAVE AND TO HOLD the Property subject, however, to each of the following conditions subsequent, which shall be binding upon and enforceable against Grantee, its successors and assigns, as follows:

1.      That for a period of thirty (30) years from the date hereof the Property herein conveyed will be used continuously for health purposes in accordance with Grantee's approved program of utilization as set forth in

Exhibit A

BOOK 2328 PAGE 0868

its application dated the 3rd day of July 2002, amended on September 3, 2002, and for no other purpose;

2.     That during the aforesaid period of thirty (30) years Grantee will not resell, lease, mortgage, or encumber or otherwise dispose of any part of the Property or interest therein except as Grantor or its successor in function may authorize in writing;

3.     Where construction or major renovation is not required or proposed, the Property must be placed into use within twelve (12) months from the date of this Deed.  Where construction or major renovation is contemplated at the time of transfer, the Property must be placed into use within thirty-six (36) months from the date of this Deed.

4.     That one year from the date hereof and annually thereafter for the aforesaid period of thirty (30) years, unless Grantor or its successor in function directs otherwise,  Grantee will file with Grantor or its successor in function reports on the operation and maintenance of the Property and will furnish, as requested, such other pertinent data evidencing continuous use of the Property for the purposes specified in the above-identified application.

5.     That during the aforesaid period of thirty (30) years  Grantee will at all times be and remain a tax-supported organization or a nonprofit institution, organization, or association exempt from taxation under section 501(c)(3) of the Internal Revenue Code of 1986, as amended.

6.     That, for the period during which the Property is used for the purpose for which the Federal assistance is hereby extended by Grantor or for another purpose involving the provision of similar services or benefits, Grantee hereby agrees that it will comply with the requirements of section 606 of the Act (40 U.S.C. § 476); the Fair Housing  Act (42 U.S.C. § 3601-19) and implementing regulations; and, as applicable, Executive Order 11063 (Equal Opportunity in Housing) and implementing regulations;  Title VI of the Civil Rights Act of 1964 (42 U.S.C. § 2000d to d-4) (Nondiscrimination in Federally Assisted Programs) and implementing regulations; Title IX of the Education Amendments of 1972 (20 U.S.C. § 1681) and implementing regulations; the prohibitions against discrimination on the basis of age under the Age Discrimination Act of 1975 (42 U.S.C. § 6101-07) and implementing regulations; the prohibitions against otherwise qualified individuals with handicaps under Section 504 of the Rehabilitation Act of 1973 (29 U.S.C. § 794) and

Exhibit A

BOOK 2328 PAGE 0869

implementing regulations, and all requirements imposed by or pursuant to the regulations of Grantor (45 C.F.R. Parts 12, 80, 84, 86 and 91) issued pursuant to said Acts and now in effect, to the end that, in accordance with said Acts and regulations, no person in the United States shall, on the ground of race, color, national origin, sex, age, or handicap, be excluded from participation in, be denied the benefits of, or otherwise be subjected to discrimination under the program and plan referred to in condition numbered 1 above or under any other program or activity of Grantee, its successors or assigns, to which said Acts and regulations apply by reason of this conveyance.

In the event of a breach of any of the conditions subsequent set forth above, whether caused by the legal or other inability of Grantee, its successors and assigns, to perform any of the obligations herein set forth, Grantor or its successor in function will, at its option, have an immediate right of reentry thereon, and to cause all right, title, and interest in and to the Property to revert to the United States of America, and Grantee, its successors and assigns, shall forfeit all right, title, and interest in and to the Property and to any and all of the tenements, hereditaments, and appurtenances thereunto belonging;

PROVIDED, HOWEVER, that the failure of Grantor or its successor in function to insist in any one or more instance upon complete performance of any of the said conditions subsequent shall not be construed as a waiver of or a relinquishment of the future performance of any of said conditions subsequent, but the obligations of Grantee with respect to such future performance shall continue in full force and effect;

PROVIDED FURTHER, that, in the event Grantor or its successor in function fails to exercise its option to reenter the premises and to revert title thereto for any such breach of conditions numbered 1, 2, 3, 4, or 5 herein within thirty-one (31) years from the date of this conveyance, conditions numbered 1, 2, 3, 4, and 5 herein, together with all rights to reenter and revert title for breach of condition, will, as of that date, terminate and be extinguished; and

PROVIDED FURTHER, that the expiration of conditions numbered 1, 2, 3, 4, and 5 and the right to reenter and revert title for breach thereof, will not affect the obligation of Grantee, its successors and assigns, with respect to condition numbered 6 herein or the right reserved to Grantor, or its successor in function, to reenter and revert title for breach of condition numbered 6.

Grantee may secure abrogation of the conditions subsequent numbered 1, 2, 3, 4, and 5 herein by:

a.   Obtaining the consent of Grantor, or its successor in function, therefor; and

Page 5 of  12

Exhibit A

BOOK 2328 PAGE 0870

 b. Payment to the United States of America of 1/360th of the percentage public benefit allowance granted of the fair market value as of the date of such requested abrogation, exclusive of the value of improvements made by Grantee to the extent that they add to the value of that portion of the Property to be released, for each month of the period to be abrogated.

 Grantee, by acceptance of this Deed, covenants and agrees for itself, its successors and assigns, with respect to the Property or any part thereof--which covenant shall attach to and run with the land for so long as the Property is used for a purpose for which Federal assistance is hereby extended by Grantor or for another purpose involving the provision of similar services or benefits, and which covenant shall in any event, and without regard to technical classification or designation, legal or otherwise, be binding to the fullest extent permitted by law and equity, for the benefit of and in favor of and enforceable by Grantor or its successor in function against Grantee, its successors and assigns for the Property, or any part thereof--that it will comply with the requirements of section 606 of the Act (40 U.S.C. § 476); the Fair Housing Act (42 U.S.C. § 3601-19) and implementing regulations; Executive Order 11063 (Equal Opportunity in Housing) and implementing regulations; Title VI of the Civil Rights Act of 1964 (42 U.S.C. § 2000d to d-4) (Nondiscrimination in Federally Assisted Programs) and implementing regulations; the prohibitions against discrimination on the basis of age under the Age Discrimination Act of 1975 (42 U.S.C. § 6101-07) and implementing regulations; and the prohibitions against otherwise qualified individuals with handicaps under Section 504 of the Rehabilitation Act of 1973 (29 U.S.C. § 794) and implementing regulations; and all requirements imposed by or pursuant to the regulations of Grantor (45 C.F.R. Parts 12, 80, 84, 86, and 91) issued pursuant to said acts and now in effect, to the end that, in accordance with said acts and regulations, no person in the United States shall, on the ground of race, color, national origin, sex, age, or handicap, be excluded from participation in, be denied the benefits of, or otherwise be subjected to discrimination under the program and plan referred to in condition numbered 1 above or under any other program or activity of Grantee, its successors or assigns, to which such acts and regulations apply by reason of this conveyance.

 Grantee covenants and agrees that the Property will be used for secular purposes, with no more than a de minimis level of other activity.

 Grantee, by acceptance of this deed, covenants and agrees for itself, its successors and assigns, that in the event Grantor exercises its option to revert all right, title, and interest in and to the Property to Grantor, or Grantee voluntarily returns title to the Property in lieu of a reverter, then Grantee shall provide protection to and maintenance of the Property at all times until such time as the title is actually reverted or returned to and accepted by Grantor.  Such protection and maintenance shall, at a minimum, conform to the standards prescribed by the General Services Administration and codified in the Federal Property Management Regulations at 41 C.F.R. Subpart 101-47.4913 now in effect, a copy of which is attached to Grantee's aforementioned application.

Exhibit A

JOK 2 3 2 8 PAGE 0 8 7 1

In the event title to the Property or any part thereof is reverted to the United States of America for noncompliance or is voluntarily reconveyed in lieu of reverter, Grantee, its successors or assigns, at the option of Grantor, or its successor in function, shall be responsible for and shall be required to reimburse the United States of America for the decreased value thereof that is not the result of reasonable wear and tear, an act of God, or alterations and conversions made by Grantee, its successors or assigns, to adapt the property to the health use for which the property was transferred. The United States of America shall, in addition thereto, be reimbursed for such damage, including such costs as may be incurred in recovering title to or possession of the above-described property, as it may sustain as a result of such noncompliance.

Grantee, by acceptance of this deed, further covenants and agrees for itself, its successors and assigns, that in the event the Property or any part thereof is, at any time within the period of thirty (30) years from the date of this conveyance, sold, leased, disposed of, or used for purposes other than those designated in condition numbered 1 above without the consent of Grantor, or its successor in function, all revenues therefrom or the reasonable value, as determined by Grantor, or its successor in function, of benefits to Grantee, deriving directly or indirectly from such sale, lease, disposal, or use, shall be considered to have been received and held in trust by Grantee for the United States of America and shall be subject to the direction and control of Grantor, or its successor in function; but the provisions of this paragraph shall not impair or affect the rights reserved to Grantor under any other provision of this Deed.

Grantee, by acceptance of this deed, covenants and agrees for itself, its successors and assigns, that the Property is transferred on an "as is, where is," basis, without warranty of any kind, either expressed or implied, including as to the condition of the Property. Grantee also covenants and agrees for itself, its successors and assigns, that Grantor has no obligation to provide any additions, improvements, or alterations to the Property.

SAVE AND EXCEPT, and there is hereby excepted and reserved unto the United States of America, and its assigns, all rights and interests which have been previously reserved to the United States of America in the Patent(s) which cover(s) the property.

SUBJECT to the following **Exceptions** to title to the extent and only to the extent they are valid and subsisting and affect the property:

1.  All existing permits, easements and rights-of-way for public streets, roads and highways, public utilities, electric power lines, electric transmission facilities, railroads, pipelines, ditches, conduits and canals on, over and across said land, whether or not of record. Including, but not limited to an easement in favor of the Standard Ice Company, recorded in Volume 158, Page 444, Records of Deeds and Mortgages, Garland County, Arkansas.

Page 7 of 12

Exhibit A

BOOK 2328 PAGE 0872

2.	All existing interest(s) to or outstanding in third parties in and to water rights, ditch rights, as well as oil, gas, and/or minerals, whether or not of record..

3.	All other existing interests reserved by any grantor(s) in chain of title unto said grantor(s), their respective successors and assigns, which affects any portion of the property interest(s) hereinabove described, whether or not of record.

4.	Any survey discrepancies, conflicts, or shortages in area or boundary lines, or any encroachments, or protusions, or any overlapping of improvements, which may affect the subject property.

5.	Existing ordinances or resolutions, special purpose district rules and regulations, including soil conservation district rules and regulations and water conservancy district rules and regulations, field of public record affecting all or any portion of the subject property.

**Navigable Airspace**

Grantee covenants for itself, its successors and assigns and every successor in interest to the property herein described, or any part thereof, that any construction or alteration is prohibited unless a determination of no hazard to air navigation is issued by the FAA in accordance with Title 14, Code of Federal Regulations, Part 77, entitled "Objects Affecting Navigable Airspace," or under the authority of the Federal Aviation Act of 1958, as amended.

**Lead-Based Paint**

NOTICE OF LEAD-BASED PAINT FOR NONRESIDENTIAL REAL PROPERTY CONSTRUCTED PRIOR TO 1978

Every purchaser of any interest in real property on which a building was built prior to 1978 is notified that such property may present exposure to lead from lead-based paint that may place young children at risk of developing lead poisoning. Lead poisoning in young children may produce permanent neurological damage, including learning disabilities, reduced intelligence quotient, behavioral problems, and impaired memory. Lead poisoning also poses a particular risk to pregnant women. The seller of any interest in residential real property is required to provide buyer with any information on lead-based paint hazards from risk assessments or inspections in the seller's possession and notify the buyer of any known lead-based paint hazards. A risk assessment or inspection for possible lead-based paint hazards is recommended prior to converting the property to a residential dwelling.

Page 8 of  12

Exhibit A

BOOK 2328 PAGE 0873

## CERCLA NOTICES, COVENANTS AND RESERVATIONS

A)  NOTICE Regarding Hazardous Substance Activity.  Pursuant to 40 CFR 373.2 and Section 120(h)(3)(A)(i) of the Comprehensive Environmental Response, Compensation and Liability Act of 1980, as amended (CERCLA) (42 U.S.C. §9620(h)(3)(A)(i)), and based upon a complete search of agency files, the United States of America gives notice that no hazardous substances have been released or disposed of or stored for one year or more on the Property.

B)  CERCLA Covenant.  The United States of America warrants that all remedial action necessary to protect human health and the environment has been taken before the date of this conveyance.  The United States of America warrants that it shall take any additional response action found to be necessary after the date of this conveyance regarding hazardous substances located on the Property on the date of this conveyance.

1)  This covenant shall not apply:

a)  in any case in which Grantee, its successor(s) or assign(s), or any successor in interest to the Property or part thereof is a Potentially Responsible Party (PRP) with respect to the Property immediately prior to the date of this conveyance; OR

b)  to the extent but only to the extent that such additional response action or part thereof found to be necessary is the result of an act or failure to act of the Grantee, its successor(s) or assign(s), or any party in possession after the date of this conveyance that either:

(i)  results in a release or threatened release of a hazardous substance that was not located on the Property on the date of they conveyance; OR

(ii)  causes or exacerbates the release or threatened release of a hazardous substance the existence and location of which was known and identified to the applicable regulatory authority as of the date of this conveyance.

2)  In the event Grantee, its successor(s) or assign(s), seeks to have the United States of America conduct or pay for any additional response action, and, as a condition precedent to the United States of

Page 9 of  12

Exhibit A

BOOK 2328 PAGE 0874

America incurring any additional cleanup obligation or related expenses, the Grantee, its successor(s) or assign(s), shall provide the United States of America at least 45 days written notice of such a claim and provide credible evidence that :

a)   the associated contamination existed prior to the date of this conveyance; and

b)   the need to conduct any additional response action or part thereof was not the result of any act or failure to act by the Grantee, its successor(s) or assign(s), or any party in possession.

C.   ACCESS.   The United States of America  reserves a right of access to all portions of the Property for environmental investigation, remediation or other corrective action.  This reservation includes the right of access to and use of available utilities at reasonable cost to the United States of America.  These rights shall be exercisable in any case in which a remedial action, response action or corrective action is found to be necessary after the date of this conveyance, or in which access is necessary to carry out a remedial action, response action, or corrective action on adjoining property.  Pursuant to this reservation, the United States of America, and its respective officers, agents, employees, contractors and subcontractors shall have the right (upon reasonable advance written notice to the record title owner) to enter upon the Property and conduct investigations and surveys, to include drilling, test-pitting, borings, data and records compilation and other activities related to environmental investigation, and to carry out remedial or removal actions as required or necessary, including but not limited to the installation and operation of monitoring wells, pumping wells, and treatment facilities.  Any such entry, including such activities, responses or remedial actions, shall be coordinated with record title owner and shall be performed in a manner that minimizes interruption with activities of authorized occupants.

IN WITNESS WHEREOF, Grantor has caused this instrument to be executed as of the day and year first above written.

UNITED STATES OF AMERICA
Acting through the Secretary of Health and Human Services

By: _Eula M. Samuel_
Eula M. Samuel, Acting Chief Real Property Branch
Division of Property Management
Program Support Center

Page 10 of  12

BOOK 2328 PAGE 0875

## ACKNOWLEDGMENT

STATE OF MARYLAND     )
COUNTY OF MONTGOMERY ) SS

On this 3rd  day of  September 2003,  before me the undersigned officer, personally appeared Eula M. Samuel, known to me to be the Acting Chief, Real Property Branch, Division of Property Management, Department of Health and Human Services, and known to me to be the person who executed the foregoing instrument on behalf of the Secretary of Health and Human Services, for the United States of America, and acknowledged to me that she subscribed to the said instrument in the name of the Secretary of Health and Human Services and on behalf of the United States of America.

Witness my hand and official seal.

(SEAL)

*Shirley C. Kramer*

Notary Public

My commission expires:  *10/11/2004*

Page 11 of   12

Exhibit A

BOOK 2328 PAGE 0876

## ACCEPTANCE

The Quapaw House, Inc. hereby accepts this deed and thereby agrees to all the terms, covenants, conditions and restrictions contained therein.

By _Mickie Grisham_

Mickie Grisham, Executive Director

## ACKNOWLEDGMENT

STATE OF ARKANSAS )
COUNTY OF GARLAND ) SS

On this 30th day of Sept. , 2003, before me, a Notary Public in and for the City of Hot Springs, County of Garland, State of Arkansas, personally appeared, Mickie Grisham, known to me to be the Executive Director, and known to me to be the person who executed the foregoing instrument on behalf of Quapaw House, Inc., and acknowledged to me that she executed the same as the free act and deed of Board of Directors.

Witness my hand and official seal.

(SEAL)

_Jo Elaine Martocking_
Notary Public

My commission expires June 18, 2013

Page 12 of   12

Exhibit A

## CERTIFICATION OF RECORDATION

I, _Vicke E Pima_ , of the Office of the County Recorder of the

County of _Garland_ , State of _Arkansas_ , did receive on the

_30th_ day of _September_ , 20 _03_ , for filing and recordation, the following

instrument:

I further certify that the same has been recorded in Book _2328_ , at Page _865_, of

the Official Records of the said County.

_Joyce Ingle_
(Signature)

_Deputy Circuit Clerk_
(Title)

Exhibit A

CERTIFICATE OF COMPLETION OF LEAD HAZARD ABATEMENT

The property consists of a 7,435 sq ft building on a 26,467 sq ft lot located at 225 Hazel Street, Hot Springs, Arkansas 71901 (the "Property").

Name and Address of Grantee:   Quapaw House, Inc.
                                                812 Mt. Pine Road, Hot Springs, AR, 71901

Mark appropriate boxes with an "X".

X   Grantee certifies that lead hazards were abated and that the following statements are true:

1. All lead-based paint hazards were abated from the Property in accordance with 40 CFR 745.227(e) and other applicable laws and regulations prior to the occupancy of any residential improvements.

2. No more than 12 months elapsed from the date on the Government's risk assessment to the time when onsite preparation activities for the abatement commenced, or the risk assessment was made current by the Grantee prior to the commencement of such activities, at no cost to the Government.

3. A clearance examination was performed in accordance with 40 CFR 745.227(e) and 24 CFR 35.1340 (c) through (f), by a person certified to perform risk assessments or lead-based paint inspections. The examination reveals that clearance samples meet the standards set forth in 24 CFR 35.1320(b)(2).

4. A true and correct copy of the clearance report, prepared by a person certified to perform risk assessments or lead-based paint inspections and in accordance with 40 CFR 745.227(e)(10), is attached.

_____ Grantee hereby certifies that the Property will not be occupied as a residence or serve children under six years of age or pregnant women (as lead-based paint poses a particular risk to this group).

_____ Grantee hereby certifies that pre-1960 housing will not be used as a residence and will be demolished, in accordance with local laws and regulations.

*Under penalty of perjury, the Grantee hereby declares that the foregoing statements are true and correct to the best of his or her knowledge and belief.*

By: *Mickie Grisham*
Print Name & Title: *MicKie GRISHAm*
Date: *9/30/03*

Exhibit A

Book 4101 Page 0897

Jeannie Pike - Circuit Clerk
Garland County, AR
Term/Cashier: H51VCH2/LINDSEY LAWSON
11/05/2019 1:39PM
Tran# 273347
Total Fees: $55.00

**RECORDATION REQUESTED BY:**
Malvern National Bank
Main Bank
501 S. Main St.
P O Box 370
Malvern, AR 72104

**WHEN RECORDED MAIL TO:**
Malvern National Bank
P O Box 370
Malvern, AR 72104

FOR RECORDER'S USE ONLY

This Mortgage prepared by:

Name: Corporate Center #800867681
Company: Malvern National Bank
Address: 425 S. Main St., Malvern, AR 72104

# MORTGAGE

**MAXIMUM LIEN.** The lien of this Mortgage shall not exceed at any one time $890,000.00.

**THIS MORTGAGE** dated October 25, 2019, is made and executed between **Quapaw House, Inc.,** an Arkansas Non-Profit Corporation, whose address is 505 W. Grand Avenue, Hot Springs, AR 71913 (referred to below as "Grantor") and **Malvern National Bank,** whose address is 501 S. Main St., P O Box 370, Malvern, AR 72104 (referred to below as "Lender").

**GRANT OF MORTGAGE.** For valuable consideration, Grantor grants, bargains, sells and conveys to Lender all of Grantor's right, title, and interest in and to the following described real property, together with all existing or subsequently erected or affixed buildings, improvements and fixtures; all easements, rights of way, and appurtenances; all water and water rights; and all other rights, royalties, and profits relating to the real property, including without limitation all minerals, oil, gas, geothermal and similar matters, **(the "Real Property")** located in Garland County, State of Arkansas:

**TRACT 1:**
Lot 3 in Block 1 of W. H. Barry's Subdivision of part of Lots 3 and 5 and all of Lot 4 in Block 91 of the Hot Springs Reservation as surveyed, mapped and platted by the U. S. Hot Springs Commissioners.

**ALSO:** Lots 4 and 5, Block 1 of W. H. Barry's Subdivision, the same being a subdivision of a part of Lots 3 and 5 and all of Lot 4 of the Hot Springs Reservation in the City of Hot Springs, Garland County, Arkansas AND Part of Lot 3 Block 91 of the United States Hot Springs Reservation as mapped and platted by the United States of Hot Springs Commissioners, described as follows: Beginning at the NE corner of Lot 3 and the SE corner of Lot 4 of Block 1 W. H. Barry's Subdivision; run thence East along the dividing line of Lot 3 and Lots 4 and 5 of said Subdivision, if said dividing line were extended a distance of 6 inches; thence Northerly parallel with the East line of Lot 4 of said Subdivision, 50.5'; thence West a distance of 6 inches to the East line of said Lot 4 of said subdivision; thence South on the East line of said Lot 4 of said subdivision, 50.5' to the Point of Beginning

**TRACT 2:**
Being a parcel of land located in Hot Springs, Garland County, Arkansas and being a part of Lot 2 of Whittington's Subdivision of Lot 12, Block 93 of the United States Hot Springs Reservation, as surveyed and platted by the United States Hot Springs Commissioners, said Parcel being the same land conveyed to Mrs. Ola Lambert by Warranty Deed No. (not numbered) recorded in Volume 259, Page 420 of the Warranty Deed records of Garland County, Hot Springs, Arkansas, and being more particularly described as follows:
BEGINNING at the Northwest corner of Lot 2 of Whittington's Subdivision of Lot 12, Block 93, of the United States Hot Springs Reservation: being S 42°30' E, a distance of 300.00 feet from the North corner of Block 93 of the United States Hot Springs Reservation; THENCE S 42°30' E with the South ROW line of Hazel Street a distance of 50.00 feet to an "X" in a brass capped monument set for corner in the North line of said Lot 2; THENCE S 47°23' W a distance of 157.20 feet to an "X" in a brass capped monument set for corner in the South line of Lot 2; THENCE N 56°37' E with the South line of Lot 2 a distance of 51.00 feet to the Southwest corner of Lot 2; same point being the Southeast corner of Lot 11, Block 93; THENCE N 47°13' E with the common line between Lots 2 and 11 a distance of 169.65 feet to the Point of Beginning. All bearings in this description are Magnetic and have a 6°30' deviation Easterly.

**ALSO:**
A Parcel of Land located in Hot Springs, Garland County, Arkansas and being Lot 11, Block 93 of the Hot Springs Reservation, as surveyed and platted by the United States Hot Springs Commissioners, SAVE AND EXCEPT a 6.00 feet by 100.00 feet perpetual right of way easement granted to the Standard Ice Company by Anne L. Midnight by deed recorded in Volume 158, Page 444, Records of Deeds and Mortgages of

Exhibit B

Loan No: ████7681

**MORTGAGE**
**(Continued)**

Book 4101 Page 0898
Page 2

Cameron County, Arkansas, said parcel being the same land conveyed to Karel A. Janota by Warranty Deed No. 10929, recorded in Volume 11, Page 650 of the Warranty Deed Records of Garland County, Hot Springs, Arkansas, and being more particularly described as follows:

BEGINNING at a point on the South ROW line of Hazel Street and the North line of Lot 11, Block 93 of the United States Hot Springs Reservation. The same point being the Northeast corner of a 6.00 feet by 100.00 feet perpetual easement granted to the Standard Ice Company and being South 42°30' East 206.00 feet from the North corner of Block 93 at the intersection of the South ROW line of Hazel Street and the East ROW line of Ouachita Avenue; THENCE South 42°30' East with the South ROW line of Hazel Street a distance of 94.00 feet to the Northeast corner of Lot 11, Block 93; same being the Northwest corner of Lot 2 of Whittington Subdivision of Lot 12, Block 93 of the United States Hot Springs Reservation; THENCE South 47°13' West with the common line between Lots 11 and 2 a distance of 169.65 feet to the Southeast corner of said Lot 11; THENCE North 56°37' West with the South line of Lot 11 a distance of 104.00 feet to an "X" in a brass capped monument set at the Southwest corner of Lot 11; THENCE North 47°30' East with the West line of said Lot 11 a distance of 95.00 feet to a point for corner;

said point being the Southwest corner of a 6.00 feet by 100.00 feet perpetual easement; thence South 42°30' East with the South line of said Easement a distance of 6.00 feet to the Southeast corner of said Easement. Thence North 47°30' East with the East line of said Easement a distance of 100.00 feet to the Point of Beginning. All bearings in this description are Magnetic and have a 6°30' deviation Easterly.

ALSO:

A Parcel of Land located in Hot Springs, Garland County, Arkansas and being a part of Lot 11, Block 93 of the Hot Springs Reservation, as surveyed and platted by the United States Hot Springs Commissioners, and being more particularly described as follows: BEGINNING at an "X" in a brass capped concrete monument set in the South ROW line of Hazel Street, at the Northwest corner of Lot 11, Block 93 of the United States Hot Springs Reservation, same being the Northwest corner of this Parcel, and being S 42°30' E, at a distance of 200.00 feet from the North corner of Block 93 at the intersection of the South ROW line of Hazel Street with the East ROW line of Ouachita Avenue; THENCE S 42°30' E with the South ROW line of Hazel Street a distance of 6.00 feet to a point for corner; THENCE S 47°30' W a distance of 100.00 feet to a point for corner; THENCE N 42°30' W a distance of 6.00 feet to a point for corner in the West line of Lot 11, Block 93; THENCE N 47°30' E with the West line of said Lot 11 a distance of 100.00 feet to the Point of Beginning. All bearings in this description are Magnetic and have a 6°30' deviation Easterly.

**The Real Property or its address is commonly known as  505 W. Grand Avenue and 225 & 227 Hazel St., Hot Springs, AR  71901.**

Grantor absolutely and presently assigns to Lender all of Grantor's right, title, and interest in and to all present and future leases of the Property and all Rents from the Property.  In addition, Grantor grants to Lender a Uniform Commercial Code security interest in the Personal Property and Rents.

**THIS MORTGAGE, INCLUDING THE ASSIGNMENT OF RENTS AND THE SECURITY INTEREST IN THE RENTS AND PERSONAL PROPERTY, IS GIVEN TO SECURE  (A)  PAYMENT OF THE INDEBTEDNESS AND  (B)  PERFORMANCE OF ANY AND ALL OBLIGATIONS UNDER THE NOTE, THE RELATED DOCUMENTS, AND THIS MORTGAGE.  THIS MORTGAGE IS GIVEN AND ACCEPTED ON THE FOLLOWING TERMS:**

**PAYMENT AND PERFORMANCE.**  Except as otherwise provided in this Mortgage, Grantor shall pay to Lender all amounts secured by this Mortgage as they become due and shall strictly perform all of Grantor's obligations under this Mortgage.

**POSSESSION AND MAINTENANCE OF THE PROPERTY.**  Grantor agrees that Grantor's possession and use of the Property shall be governed by the following provisions:

**Possession and Use.**  Until the occurrence of an Event of Default, Grantor may  (1)  remain in possession and control of the Property; (2)  use, operate or manage the Property; and  (3)  collect the Rents from the Property.

**Duty to Maintain.**  Grantor shall maintain the Property in tenantable condition and promptly perform all repairs, replacements, and maintenance necessary to preserve its value.

**Compliance With Environmental Laws.**  Grantor represents and warrants to Lender that:  (1)  During the period of Grantor's ownership of the Property, there has been no use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance by any person on, under, about or from the Property;  (2)  Grantor has no knowledge of, or reason to believe that there has been, except as previously disclosed to and acknowledged by Lender in writing,  (a)  any breach or violation of any Environmental Laws,  (b)  any use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance on, under, about or from the Property by any prior owners or occupants of the Property, or  (c)  any actual or threatened litigation or claims of any kind by any person relating to such matters; and  (3)  Except as previously disclosed to and acknowledged by Lender in writing,  (a)  neither Grantor nor any tenant, contractor, agent or other authorized user of the Property shall use, generate, manufacture, store, treat, dispose of or release any Hazardous Substance on, under, about or from the Property; and  (b)  any such activity shall be conducted in compliance with all applicable federal, state, and local laws, regulations and ordinances, including without limitation all Environmental Laws. Grantor authorizes Lender and its agents to enter upon the Property to make such inspections and tests, at Grantor's expense, as Lender may deem appropriate to determine compliance of the Property with this section of the Mortgage.  Any inspections or tests made by Lender shall be for Lender's purposes only and shall not be construed to create any responsibility or liability on the part of Lender to Grantor or to any other person.  The representations and warranties contained herein are based on Grantor's due diligence in investigating the Property for Hazardous Substances.  Grantor hereby  (1)  releases and waives any future claims against Lender for indemnity or contribution in the event Grantor becomes liable for cleanup or other costs under any such laws; and  (2)  agrees to indemnify, defend, and hold harmless Lender against any and all claims, losses, liabilities, damages, penalties, and expenses which Lender may directly or indirectly sustain or suffer resulting from a

**MORTGAGE**
**(Continued)**

Book 4101 Page 0899

Loan No: 7681

Page 3

breach of this section of the Mortgage or as a consequence of any use, generation, manufacture, storage, disposal, release or threatened release occurring prior to Grantor's ownership or interest in the Property, whether or not the same was or should have been known to Grantor. The provisions of this section of the Mortgage, including the obligation to indemnify and defend, shall survive the payment of the Indebtedness and the satisfaction and reconveyance of the lien of this Mortgage and shall not be affected by Lender's acquisition of any interest in the Property, whether by foreclosure or otherwise.

**Nuisance, Waste.** Grantor shall not cause, conduct or permit any nuisance nor commit, permit, or suffer any stripping of or waste on or to the Property or any portion of the Property. Without limiting the generality of the foregoing, Grantor will not remove, or grant to any other party the right to remove, any timber, minerals (including oil and gas), coal, clay, scoria, soil, gravel or rock products without Lender's prior written consent.

**Removal of Improvements.** Grantor shall not demolish or remove any Improvements from the Real Property without Lender's prior written consent. As a condition to the removal of any Improvements, Lender may require Grantor to make arrangements satisfactory to Lender to replace such Improvements with Improvements of at least equal value.

**Lender's Right to Enter.** Lender and Lender's agents and representatives may enter upon the Real Property at all reasonable times to attend to Lender's interests and to inspect the Real Property for purposes of Grantor's compliance with the terms and conditions of this Mortgage.

**Compliance with Governmental Requirements.** Grantor shall promptly comply with all laws, ordinances, and regulations, now or hereafter in effect, of all governmental authorities applicable to the use or occupancy of the Property, including without limitation, the Americans With Disabilities Act. Grantor may contest in good faith any such law, ordinance, or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Grantor has notified Lender in writing prior to doing so and so long as, in Lender's sole opinion, Lender's interests in the Property are not jeopardized. Lender may require Grantor to post adequate security or a surety bond, reasonably satisfactory to Lender, to protect Lender's interest.

**Duty to Protect.** Grantor agrees neither to abandon or leave unattended the Property. Grantor shall do all other acts, in addition to those acts set forth above in this section, which from the character and use of the Property are reasonably necessary to protect and preserve the Property.

**DUE ON SALE - CONSENT BY LENDER.** Lender may, at Lender's option, declare immediately due and payable all sums secured by this Mortgage upon the sale or transfer, without Lender's prior written consent, of all or any part of the Real Property, or any interest in the Real Property. A "sale or transfer" means the conveyance of Real Property or any right, title or interest in the Real Property; whether legal, beneficial or equitable; whether voluntary or involuntary; whether by outright sale, deed, installment sale contract, land contract, contract for deed, leasehold interest with a term greater than three (3) years, lease-option contract, or by sale, assignment, or transfer of any beneficial interest in or to any land trust holding title to the Real Property, or by any other method of conveyance of an interest in the Real Property. If any Grantor is a corporation, partnership or limited liability company, transfer also includes any restructuring of the legal entity (whether by merger, division or otherwise) or any change in ownership of more than twenty-five percent (25%) of the voting stock, partnership interests or limited liability company interests, as the case may be, of such Grantor. However, this option shall not be exercised by Lender if such exercise is prohibited by federal law or by Arkansas law.

**TAXES AND LIENS.** The following provisions relating to the taxes and liens on the Property are part of this Mortgage:

**Payment.** Grantor shall pay when due (and in all events prior to delinquency) all taxes, payroll taxes, special taxes, assessments, water charges and sewer service charges levied against or on account of the Property, and shall pay when due all claims for work done on or for services rendered or material furnished to the Property. Grantor shall maintain the Property free of any liens having priority over or equal to the interest of Lender under this Mortgage, except for the Existing Indebtedness referred to in this Mortgage or those liens specifically agreed to in writing by Lender, and except for the lien of taxes and assessments not due as further specified in the Right to Contest paragraph.

**Right to Contest.** Grantor may withhold payment of any tax, assessment, or claim in connection with a good faith dispute over the obligation to pay, so long as Lender's interest in the Property is not jeopardized. If a lien arises or is filed as a result of nonpayment, Grantor shall within fifteen (15) days after the lien arises or, if a lien is filed, within fifteen (15) days after Grantor has notice of the filing, secure the discharge of the lien, or if requested by Lender, deposit with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender in an amount sufficient to discharge the lien plus any costs and reasonable attorneys' fees, or other charges that could accrue as a result of a foreclosure or sale under the lien. In any contest, Grantor shall defend itself and Lender and shall satisfy any adverse judgment before enforcement against the Property. Grantor shall name Lender as an additional obligee under any surety bond furnished in the contest proceedings.

**Evidence of Payment.** Grantor shall upon demand furnish to Lender satisfactory evidence of payment of the taxes or assessments and shall authorize the appropriate governmental official to deliver to Lender at any time a written statement of the taxes and assessments against the Property.

**Notice of Construction.** Grantor shall notify Lender at least fifteen (15) days before any work is commenced, any services are furnished, or any materials are supplied to the Property, if any mechanic's lien, materialmen's lien, or other lien could be asserted on account of the work, services, or materials. Grantor will upon request of Lender furnish to Lender advance assurances satisfactory to Lender that Grantor can and will pay the cost of such improvements.

**PROPERTY DAMAGE INSURANCE.** The following provisions relating to insuring the Property are a part of this Mortgage:

**Maintenance of Insurance.** Grantor shall procure and maintain policies of fire insurance with standard extended coverage endorsements on a replacement basis for the full insurable value covering all Improvements on the Real Property in an amount sufficient to avoid application of any coinsurance clause, and with a standard mortgagee clause in favor of Lender. Grantor shall also procure and maintain comprehensive general liability insurance in such coverage amounts as Lender may request with Lender being named as additional insureds in such liability insurance policies. Additionally, Grantor shall maintain such other insurance, including but not limited to hazard, business interruption and boiler insurance as Lender may require. Policies shall be written by such insurance companies and in such form as may be reasonably acceptable to Lender. Grantor shall deliver to Lender certificates of coverage from

**Loan No:** ████7681

## MORGAGE
(Continued)

Book 4101 Page 0900
Page 4

each insurer containing a stipulation that coverage will not be cancelled or diminished without a minimum of ten (10) days' prior written notice to Lender and not containing any disclaimer of the insurer's liability for failure to give such notice. Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Grantor or any other person. Should the Real Property be located in an area designated by the Administrator of the Federal Emergency Management Agency as a special flood hazard area, Grantor agrees to obtain and maintain flood insurance, if available, within 45 days after notice is given by Lender that the Property is located in a special flood hazard area, for the full unpaid principal balance of the loan and any prior liens on the property securing the loan, up to the maximum policy limits set under the National Flood Insurance Program, or as otherwise required by Lender, and to maintain such insurance for the term of the loan. Flood insurance may be purchased under the National Flood Insurance Program, from private insurers providing "private flood insurance" as defined by applicable federal flood insurance statutes and regulations, or from another flood insurance provider that is both acceptable to Lender in its sole discretion and permitted by applicable federal flood insurance statutes and regulations.

**Application of Proceeds.** Grantor shall promptly notify Lender of any loss or damage to the Property. Lender may make proof of loss if Grantor fails to do so within fifteen (15) days of the casualty. Whether or not Lender's security is impaired, Lender may, at Lender's election, receive and retain the proceeds of any insurance and apply the proceeds to the reduction of the Indebtedness, payment of any lien affecting the Property, or the restoration and repair of the Property. If Lender elects to apply the proceeds to restoration and repair, Grantor shall repair or replace the damaged or destroyed Improvements in a manner satisfactory to Lender. Lender shall, upon satisfactory proof of such expenditure, pay or reimburse Grantor from the proceeds for the reasonable cost of repair or restoration if Grantor is not in default under this Mortgage. Any proceeds which have not been disbursed within 180 days after their receipt and which Lender has not committed to the repair or restoration of the Property shall be used first to pay any amount owing to Lender under this Mortgage, then to pay accrued interest, and the remainder, if any, shall be applied to the principal balance of the Indebtedness. If Lender holds any proceeds after payment in full of the Indebtedness, such proceeds shall be paid to Grantor as Grantor's interests may appear.

**Compliance with Existing Indebtedness.** During the period in which any Existing Indebtedness described below is in effect, compliance with the insurance provisions contained in the instrument evidencing such Existing Indebtedness shall constitute compliance with the insurance provisions under this Mortgage, to the extent compliance with the terms of this Mortgage would constitute a duplication of insurance requirement. If any proceeds from the insurance become payable on loss, the provisions in this Mortgage for division of proceeds shall apply only to that portion of the proceeds not payable to the holder of the Existing Indebtedness.

**Grantor's Report on Insurance.** Upon request of Lender, however not more than once a year, Grantor shall furnish to Lender a report on each existing policy of insurance showing: (1) the name of the insurer; (2) the risks insured; (3) the amount of the policy; (4) the property insured, the then current replacement value of such property, and the manner of determining that value; and (5) the expiration date of the policy. Grantor shall, upon request of Lender, have an independent appraiser satisfactory to Lender determine the cash value replacement cost of the Property.

**LENDER'S EXPENDITURES.** If any action or proceeding is commenced that would materially affect Lender's interest in the Property or if Grantor fails to comply with any provision of this Mortgage or any Related Documents, including but not limited to Grantor's failure to comply with any obligation to maintain Existing Indebtedness in good standing as required below, or to discharge or pay when due any amounts Grantor is required to discharge or pay under this Mortgage or any Related Documents, Lender on Grantor's behalf may (but shall not be obligated to) take any action that Lender deems appropriate, including but not limited to discharging or paying all taxes, liens, security interests, encumbrances and other claims, at any time levied or placed on the Property and paying all costs for insuring, maintaining and preserving the Property. All such expenditures incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Grantor. All such expenses will become a part of the Indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Note; or (C) be treated as a balloon payment which will be due and payable at the Note's maturity. The Mortgage also will secure payment of these amounts. Such right shall be in addition to all other rights and remedies to which Lender may be entitled upon the occurrence of any Event of Default.

**WARRANTY; DEFENSE OF TITLE.** The following provisions relating to ownership of the Property are a part of this Mortgage:

**Title.** Grantor warrants that: (a) Grantor holds good and marketable title of record to the Property in fee simple, free and clear of all liens and encumbrances other than those set forth in the Real Property description or in the Existing Indebtedness section below or in any title insurance policy, title report, or final title opinion issued in favor of, and accepted by, Lender in connection with this Mortgage, and (b) Grantor has the full right, power, and authority to execute and deliver this Mortgage to Lender.

**Defense of Title.** Subject to the exception in the paragraph above, Grantor warrants and will forever defend the title to the Property against the lawful claims of all persons. In the event any action or proceeding is commenced that questions Grantor's title or the interest of Lender under this Mortgage, Grantor shall defend the action at Grantor's expense. Grantor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of Lender's own choice, and Grantor will deliver, or cause to be delivered, to Lender such instruments as Lender may request from time to time to permit such participation.

**Compliance With Laws.** Grantor warrants that the Property and Grantor's use of the Property complies with all existing applicable laws, ordinances, and regulations of governmental authorities.

**Survival of Representations and Warranties.** All representations, warranties, and agreements made by Grantor in this Mortgage shall survive the execution and delivery of this Mortgage, shall be continuing in nature, and shall remain in full force and effect until such time as Grantor's Indebtedness shall be paid in full.

**EXISTING INDEBTEDNESS.** The following provisions concerning Existing Indebtedness are a part of this Mortgage:

**Existing Lien.** The lien of this Mortgage securing the Indebtedness may be secondary and inferior to an existing lien. Grantor expressly covenants and agrees to pay, or see to the payment of, the Existing Indebtedness and to prevent any default on such indebtedness, any default under the instruments evidencing such indebtedness, or any default under any security documents for such

indebtedness.

**No Modification.** Grantor shall not enter into any agreement with the holder of any mortgage, deed of trust, or other security agreement which has priority over this Mortgage by which that agreement is modified, amended, extended, or renewed without the prior written consent of Lender. Grantor shall neither request nor accept any future advances under any such security agreement without the prior written consent of Lender.

**CONDEMNATION.** The following provisions relating to condemnation proceedings are a part of this Mortgage:

**Proceedings.** If any proceeding in condemnation is filed, Grantor shall promptly notify Lender in writing, and Grantor shall promptly take such steps as may be necessary to defend the action and obtain the award. Grantor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of its own choice, and Grantor will deliver or cause to be delivered to Lender such instruments and documentation as may be requested by Lender from time to time to permit such participation.

**Application of Net Proceeds.** If all or any part of the Property is condemned by eminent domain proceedings or by any proceeding or purchase in lieu of condemnation, Lender may at its election require that all or any portion of the net proceeds of the award be applied to the Indebtedness or the repair or restoration of the Property. The net proceeds of the award shall mean the award after payment of all reasonable costs, expenses, and attorneys' fees incurred by Lender in connection with the condemnation.

**IMPOSITION OF TAXES, FEES AND CHARGES BY GOVERNMENTAL AUTHORITIES.** The following provisions relating to governmental taxes, fees and charges are a part of this Mortgage:

**Current Taxes, Fees and Charges.** Upon request by Lender, Grantor shall execute such documents in addition to this Mortgage and take whatever other action is requested by Lender to perfect and continue Lender's lien on the Real Property. Grantor shall reimburse Lender for all taxes, as described below, together with all expenses incurred in recording, perfecting or continuing this Mortgage, including without limitation all taxes, fees, documentary stamps, and other charges for recording or registering this Mortgage.

**Taxes.** The following shall constitute taxes to which this section applies: (1) a specific tax upon this type of Mortgage or upon all or any part of the Indebtedness secured by this Mortgage; (2) a specific tax on Grantor which Grantor is authorized or required to deduct from payments on the Indebtedness secured by this type of Mortgage; (3) a tax on this type of Mortgage chargeable against the Lender or the holder of the Note; and (4) a specific tax on all or any portion of the Indebtedness or on payments of principal and interest made by Grantor.

**Subsequent Taxes.** If any tax to which this section applies is enacted subsequent to the date of this Mortgage, this event shall have the same effect as an Event of Default, and Lender may exercise any or all of its available remedies for an Event of Default as provided below unless Grantor either (1) pays the tax before it becomes delinquent, or (2) contests the tax as provided above in the Taxes and Liens section and deposits with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender.

**SECURITY AGREEMENT; FINANCING STATEMENTS.** The following provisions relating to this Mortgage as a security agreement are a part of this Mortgage:

**Security Agreement.** This instrument shall constitute a Security Agreement to the extent any of the Property constitutes fixtures, and Lender shall have all of the rights of a secured party under the Uniform Commercial Code as amended from time to time.

**Security Interest.** Upon request by Lender, Grantor shall take whatever action is requested by Lender to perfect and continue Lender's security interest in the Rents and Personal Property. In addition to recording this Mortgage in the real property records, Lender may, at any time and without further authorization from Grantor, file executed counterparts, copies or reproductions of this Mortgage as a financing statement. Grantor shall reimburse Lender for all expenses incurred in perfecting or continuing this security interest. Upon default, Grantor shall not remove, sever or detach the Personal Property from the Property. Upon default, Grantor shall assemble any Personal Property not affixed to the Property in a manner and at a place reasonably convenient to Grantor and Lender and make it available to Lender within three (3) days after receipt of written demand from Lender to the extent permitted by applicable law.

**Addresses.** The mailing addresses of Grantor (debtor) and Lender (secured party) from which information concerning the security interest granted by this Mortgage may be obtained (each as required by the Uniform Commercial Code) are as stated on the first page of this Mortgage.

**FURTHER ASSURANCES; ATTORNEY-IN-FACT.** The following provisions relating to further assurances and attorney-in-fact are a part of this Mortgage:

**Further Assurances.** At any time, and from time to time, upon request of Lender, Grantor will make, execute and deliver, or will cause to be made, executed or delivered, to Lender or to Lender's designee, and when requested by Lender, cause to be filed, recorded, refiled, or rerecorded, as the case may be, at such times and in such offices and places as Lender may deem appropriate, any and all such mortgages, deeds of trust, security deeds, security agreements, financing statements, continuation statements, instruments of further assurance, certificates, and other documents as may, in the sole opinion of Lender, be necessary or desirable in order to effectuate, complete, perfect, continue, or preserve (1) Grantor's obligations under the Note, this Mortgage, and the Related Documents, and (2) the liens and security interests created by this Mortgage on the Property, whether now owned or hereafter acquired by Grantor. Unless prohibited by law or Lender agrees to the contrary in writing, Grantor shall reimburse Lender for all costs and expenses incurred in connection with the matters referred to in this paragraph.

**Attorney-in-Fact.** If Grantor fails to do any of the things referred to in the preceding paragraph, Lender may do so for and in the name of Grantor and at Grantor's expense. For such purposes, Grantor hereby irrevocably appoints Lender as Grantor's attorney-in-fact for the purpose of making, executing, delivering, filing, recording, and doing all other things as may be necessary or desirable, in Lender's sole opinion, to accomplish the matters referred to in the preceding paragraph.

**FULL PERFORMANCE.** If Grantor pays all the Indebtedness when due, and otherwise performs all the obligations imposed upon Grantor under this Mortgage, Lender shall execute and deliver to Grantor a suitable satisfaction of this Mortgage and suitable statements of termination of any financing statement on file evidencing Lender's security interest in the Rents and the Personal Property. Grantor will pay, if permitted by applicable law, any reasonable termination fee as determined by Lender from time to time.

Loan No: ████7681      **MORTGAGE**
**(Continued)**      Book 4101 Page 0902

         Page 6

**EVENTS OF DEFAULT.** Each of the following, at Lender's option, shall constitute an Event of Default under this Mortgage:

**Payment Default.** Grantor fails to make any payment when due under the Indebtedness.

**Default on Other Payments.** Failure of Grantor within the time required by this Mortgage to make any payment for taxes or insurance, or any other payment necessary to prevent filing of or to effect discharge of any lien.

**Other Defaults.** Grantor fails to comply with or to perform any other term, obligation, covenant or condition contained in this Mortgage or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Grantor.

**Default in Favor of Third Parties.** Should Grantor default under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Grantor's property or Grantor's ability to repay the Indebtedness or Grantor's ability to perform Grantor's obligations under this Mortgage or any of the Related Documents.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Grantor or on Grantor's behalf under this Mortgage or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Defective Collateralization.** This Mortgage or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Insolvency.** The dissolution or termination of Grantor's existence as a going business, the insolvency of Grantor, the appointment of a receiver for any part of Grantor's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Grantor.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Grantor or by any governmental agency against any property securing the Indebtedness. This includes a garnishment of any of Grantor's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Grantor as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Grantor gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Existing Indebtedness.** The payment of any installment of principal or any interest on the Existing Indebtedness is not made within the time required by the promissory note evidencing such indebtedness, or a default occurs under the instrument securing such indebtedness and is not cured during any applicable grace period in such instrument, or any suit or other action is commenced to foreclose any existing lien on the Property.

**Breach of Other Agreement.** Any breach by Grantor under the terms of any other agreement between Grantor and Lender that is not remedied within any grace period provided therein, including without limitation any agreement concerning any indebtedness or other obligation of Grantor to Lender, whether existing now or later.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party of any of the Indebtedness or any guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness.

**Adverse Change.** A material adverse change occurs in Grantor's financial condition, or Lender believes the prospect of payment or performance of the Indebtedness is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**RIGHTS AND REMEDIES ON DEFAULT.** Upon the occurrence of an Event of Default and at any time thereafter, Lender, at Lender's option, may exercise any one or more of the following rights and remedies, in addition to any other rights or remedies provided by law:

**Accelerate Indebtedness.** Lender shall have the right at its option without notice to Grantor to declare the entire Indebtedness immediately due and payable, including any prepayment penalty that Grantor would be required to pay.

**UCC Remedies.** With respect to all or any part of the Personal Property, Lender shall have all the rights and remedies of a secured party under the Uniform Commercial Code.

**Collect Rents.** Lender shall have the right, without notice to Grantor, to take possession of the Property and collect the Rents, including amounts past due and unpaid, and apply the net proceeds, over and above Lender's costs, against the Indebtedness. In furtherance of this right, Lender may require any tenant or other user of the Property to make payments of rent or use fees directly to Lender. If the Rents are collected by Lender, then Grantor irrevocably designates Lender as Grantor's attorney-in-fact to endorse instruments received in payment thereof in the name of Grantor and to negotiate the same and collect the proceeds. Payments by tenants or other users to Lender in response to Lender's demand shall satisfy the obligations for which the payments are made, whether or not any proper grounds for the demand existed. Lender may exercise its rights under this subparagraph either in person, by agent, or through a receiver.

**Appoint Receiver.** Lender shall have the right to have a receiver appointed to take possession of all or any part of the Property, with the power to protect and preserve the Property, to operate the Property preceding foreclosure or sale, and to collect the Rents from the Property and apply the proceeds, over and above the cost of the receivership, against the Indebtedness. The receiver may serve without bond if permitted by law. Lender's right to the appointment of a receiver shall exist whether or not the apparent value of the Property exceeds the Indebtedness by a substantial amount. Employment by Lender shall not disqualify a person from serving as a receiver.

**Judicial Foreclosure.** Lender may obtain a judicial decree foreclosing Grantor's interest in all or any part of the Property.

**Nonjudicial Sale.** If permitted by applicable law, Lender may foreclose Grantor's interest in all or in any part of the Personal Property

Exhibit B

**MORTGAGE**
**(Continued)**

Loan No: ▮▮7681

Book 4101 Page 0903
Page 7

or the Real Property by non-judicial sale.

**Deficiency Judgment.** If permitted by applicable law, Lender may obtain a judgment for any deficiency remaining in the Indebtedness due to Lender after application of all amounts received from the exercise of the rights provided in this section.

**Tenancy at Sufferance.** If Grantor remains in possession of the Property after the Property is sold as provided above or Lender otherwise becomes entitled to possession of the Property upon default of Grantor, Grantor shall become a tenant at sufferance of Lender or the purchaser of the Property and shall, at Lender's option, either (1) pay a reasonable rental for the use of the Property, or (2) vacate the Property immediately upon the demand of Lender.

**Other Remedies.** Lender shall have all other rights and remedies provided in this Mortgage or the Note or available at law or in equity.

**Sale of the Property.** To the extent permitted by applicable law, Grantor hereby waives any and all right to have the Property marshalled. In exercising its rights and remedies, Lender shall be free to sell all or any part of the Property together or separately, in one sale or by separate sales. Lender shall be entitled to bid at any public sale on all or any portion of the Property.

**Notice of Sale.** Lender shall give Grantor reasonable notice of the time and place of any public sale of the Personal Property or of the time after which any private sale or other intended disposition of the Personal Property is to be made. Reasonable notice shall mean notice given at least ten (10) days before the time of the sale or disposition. Any sale of the Personal Property may be made in conjunction with any sale of the Real Property.

**Election of Remedies.** Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Grantor under this Mortgage, after Grantor's failure to perform, shall not affect Lender's right to declare a default and exercise its remedies. Nothing under this Mortgage or otherwise shall be construed so as to limit or restrict the rights and remedies available to Lender following an Event of Default, or in any way to limit or restrict the rights and ability of Lender to proceed directly against Grantor and/or against any other co-maker, guarantor, surety or endorser and/or to proceed against any other collateral directly or indirectly securing the Indebtedness.

**Attorneys' Fees; Expenses.** If Lender institutes any suit or action to enforce any of the terms of this Mortgage, Lender shall be entitled to recover such sum as the court may adjudge reasonable as attorneys' fees at trial and upon any appeal. Whether or not any court action is involved, and to the extent not prohibited by law, all reasonable expenses Lender incurs that in Lender's opinion are necessary at any time for the protection of its interest or the enforcement of its rights shall become a part of the Indebtedness payable on demand and shall bear interest at the Note rate from the date of the expenditure until repaid. Expenses covered by this paragraph include, without limitation, however subject to any limits under applicable law, Lender's reasonable attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including reasonable attorneys' fees and expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services, the cost of searching records, obtaining title reports (including foreclosure reports), surveyors' reports, and appraisal fees and title insurance, to the extent permitted by applicable law. Grantor also will pay any court costs, in addition to all other sums provided by law.

**NOTICES.** Any notice required to be given under this Mortgage, including without limitation any notice of default and any notice of sale shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Mortgage. All copies of notices of foreclosure from the holder of any lien which has priority over this Mortgage shall be sent to Lender's address, as shown near the beginning of this Mortgage. Any party may change its address for notices under this Mortgage by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Grantor agrees to keep Lender informed at all times of Grantor's current address. Unless otherwise provided or required by law, if there is more than one Grantor, any notice given by Lender to any Grantor is deemed to be notice given to all Grantors.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Mortgage:

**Amendments.** This Mortgage, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Mortgage. No alteration of or amendment to this Mortgage shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Annual Reports.** If the Property is used for purposes other than Grantor's residence, Grantor shall furnish to Lender, upon request, a certified statement of net operating income received from the Property during Grantor's previous fiscal year in such form and detail as Lender shall require. "Net operating income" shall mean all cash receipts from the Property less all cash expenditures made in connection with the operation of the Property.

**Caption Headings.** Caption headings in this Mortgage are for convenience purposes only and are not to be used to interpret or define the provisions of this Mortgage.

**Governing Law. This Mortgage will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Arkansas without regard to its conflicts of law provisions. This Mortgage has been accepted by Lender in the State of Arkansas.**

**Choice of Venue.** If there is a lawsuit, Grantor agrees upon Lender's request to submit to the jurisdiction of the courts of Hot Spring County, State of Arkansas.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Mortgage unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Mortgage shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Mortgage. No prior waiver by Lender, nor any course of dealing between Lender and Grantor, shall constitute a waiver of any of Lender's rights or of any of Grantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Mortgage, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

Exhibit B

Loan No: �anad 7681

**MORTGAGE**
**(Continued)**

Book 4101 Page 0994
Page 8

**Severability.** If a court of competent jurisdiction finds any provision of this Mortgage to be illegal, invalid, or unenforceable as to any circumstance, that finding shall not make the offending provision illegal, invalid, or unenforceable as to any other circumstance. If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable. If the offending provision cannot be so modified, it shall be considered deleted from this Mortgage. Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Mortgage shall not affect the legality, validity or enforceability of any other provision of this Mortgage.

**Merger.** There shall be no merger of the interest or estate created by this Mortgage with any other interest or estate in the Property at any time held by or for the benefit of Lender in any capacity, without the written consent of Lender.

**Successors and Assigns.** Subject to any limitations stated in this Mortgage on transfer of Grantor's interest, this Mortgage shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Property becomes vested in a person other than Grantor, Lender, without notice to Grantor, may deal with Grantor's successors with reference to this Mortgage and the Indebtedness by way of forbearance or extension without releasing Grantor from the obligations of this Mortgage or liability under the Indebtedness.

**Time is of the Essence.** Time is of the essence in the performance of this Mortgage.

**Waive Jury.** All parties to this Mortgage hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by any party against any other party.

**Waiver of Homestead Exemption and Other Rights.** Grantor hereby releases and waives all rights and benefits of the homestead exemption laws of the State of Arkansas as to all Indebtedness secured by this Mortgage, waives all rights of appraisement, sale and redemption under the laws of Arkansas, including the Act of the General Assembly of Arkansas dated May 8, 1899 and Acts amendatory thereof, and, if applicable, waives all claims of dower or curtesy.

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Mortgage. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Mortgage shall have the meanings attributed to such terms in the Uniform Commercial Code:

**Borrower.** The word "Borrower" means Quapaw House, Inc. and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**Environmental Laws.** The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., or other applicable state or federal laws, rules, or regulations adopted pursuant thereto.

**Event of Default.** The words "Event of Default" mean any of the events of default set forth in this Mortgage in the events of default section of this Mortgage.

**Existing Indebtedness.** The words "Existing Indebtedness" mean the indebtedness described in the Existing Liens provision of this Mortgage.

**Grantor.** The word "Grantor" means Quapaw House, Inc..

**Guaranty.** The word "Guaranty" means the guaranty from guarantor, endorser, surety, or accommodation party to Lender, including without limitation a guaranty of all or part of the Note.

**Hazardous Substances.** The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws. The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos.

**Improvements.** The word "Improvements" means all existing and future improvements, buildings, structures, mobile homes affixed on the Real Property, facilities, additions, replacements and other construction on the Real Property.

**Indebtedness.** The word "Indebtedness" means all principal, interest, and other amounts, costs and expenses payable under the Note or Related Documents, together with all renewals of, extensions of, modifications of, consolidations of and substitutions for the Note or Related Documents and any amounts expended or advanced by Lender to discharge Grantor's obligations or expenses incurred by Lender to enforce Grantor's obligations under this Mortgage, together with interest on such amounts as provided in this Mortgage.

**Lender.** The word "Lender" means Malvern National Bank, its successors and assigns.

**Mortgage.** The word "Mortgage" means this Mortgage between Grantor and Lender.

**Note.** The word "Note" means the promissory note dated October 25, 2019, **in the original principal amount of $890,000.00** from Grantor to Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the promissory note or agreement. The maturity date of the Note is April 25, 2022.

**Personal Property.** The words "Personal Property" mean all equipment, fixtures, and other articles of personal property now or hereafter owned by Grantor, and now or hereafter attached or affixed to the Real Property; together with all accessions, parts, and additions to, all replacements of, and all substitutions for, any of such property; and together with all proceeds (including without limitation all insurance proceeds and refunds of premiums) from any sale or other disposition of the Property.

**Property.** The word "Property" means collectively the Real Property and the Personal Property.

**Loan No:** ███7681

**MORTGAGE**
**(Continued)**

Book 4101 Page 0905

**Page 9**

**Real Property.** The words "Real Property" mean the real property, interests and rights, as further described in this Mortgage.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

**Rents.** The word "Rents" means all present and future rents, revenues, income, issues, royalties, profits, and other benefits derived from the Property.

GRANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS MORTGAGE, AND GRANTOR AGREES TO ITS TERMS.

GRANTOR:

QUAPAW HOUSE, INC.

By: _____
  Pat Parker, Board President of Quapaw House, Inc.

---

## CORPORATE ACKNOWLEDGMENT

STATE OF ___Arkansas___ )
                                              ) SS
COUNTY OF ___Saline___ )

On this ___25th___ day of ___October___, 20 __19__, before me, ___Amber Accardo___ a Notary Public, (or before any officer within this State or without the State now qualified under existing law to take acknowledgments), duly commissioned, qualified and acting, within and for said County and State, appeared in person the within named Pat Parker, (being the person or persons authorized by said corporation to execute such instrument, stating their respective capacities in that behalf), to me personally well known (or satisfactorily proven to be such person), who stated that he or she was the **Board President of Quapaw House, Inc.**, a corporation, and was duly authorized in his or her respective capacity to execute the foregoing instrument(s) for and in the name and behalf of said corporation, and further stated and acknowledged that he or she had so signed, executed, and delivered said foregoing instrument for the consideration, uses, and purposes therein mentioned and set forth.

IN TESTIMONY WHEREOF, I have hereunto set my hand and official seal this ___25th___ day of ___October___, 20___.

By ___Amber Noel Accardo___            Residing at ___Saline County___

Notary Public in and for the State of ___Arkansas___     My commission expires ___Sept. 14, 2028___

AMBER NOEL ACCARDO
NOTARY PUBLIC
#12705179
Expires 09.14.28
SALINE COUNTY, AR

Garland County, AR
I certify this instrument was
filed on 11/05/2019 1:39PM
and recorded in DEED Book
4101 at pages 0897 - 0905
Joannie Pike - Circuit Clerk

Exhibit B

759z

Book 4101 Page 0906

Jeannie Pike - Circuit Clerk
Garland County, AR
Term/Cashier: H51VCH2/LINDSEY LAWSON
11/05/2019  1:42PM
Tran: 273348
Total Fees:  $55.00

**RECORDATION REQUESTED BY:**
Malvern National Bank
Main Bank
501 S. Main St.
P O Box 370
Malvern, AR  72104

**WHEN RECORDED MAIL TO:**
Malvern National Bank
P O Box 370
Malvern, AR  72104

E 2

FOR RECORDER'S USE ONLY

This Mortgage prepared by:

Name:  Corporate Center #800867592
Company:  Malvern National Bank
Address:  425 S. Main St., Malvern, AR 72104

# MORTGAGE

**MAXIMUM LIEN.  The lien of this Mortgage shall not exceed at any one time $1,000,000.00.**

**THIS MORTGAGE** dated October 25, 2019, is made and executed between **Quapaw House, Inc.,** an Arkansas Non-Profit Corporation, whose address is 505 W. Grand Avenue, Hot Springs, AR  71913 (referred to below as "Grantor") and **Malvern National Bank,** whose address is 501 S. Main St., P O Box 370, Malvern, AR  72104 (referred to below as "Lender").

**GRANT OF MORTGAGE.  For** valuable consideration, **Grantor** grants, bargains, sells and conveys to Lender all of Grantor's right, title, and interest in and to the following described real property, together with all existing or subsequently erected or affixed buildings, improvements and fixtures; all easements, rights of way, and appurtenances; all water and water rights; and all other rights, royalties, and profits relating to the real property, including without limitation all minerals, oil, gas, geothermal and similar matters, **(the "Real Property") located in Garland County, State of Arkansas:**

**TRACT 1:**
Lot 3 in Block 1 of W. H. Barry's Subdivision of part of Lots 3 and 5 and all of Lot 4 in Block 91 of the Hot Springs Reservation as surveyed, mapped and platted by the U. S. Hot Springs Commissioners.

**ALSO: Lots 4 and 5, Block 1 of W. H. Barry's Subdivision,** the same being a subdivision of a part of Lots 3 and 5 and all of Lot 4 of the Hot Springs Reservation in the City of Hot Springs, Garland County, Arkansas AND Part of Lot 3 Block 91 of the United States Hot Springs Reservation as mapped and platted by the United States of Hot Springs Commissioners, described as follows: Beginning at the NE corner of Lot 3 and the SE corner of Lot 4 of Block 1 W. H. Barry's Subdivision; run thence East along the dividing line of Lot 3 and Lots 4 and 5 of said Subdivision, if said dividing line were extended a distance of 6 inches; thence Northerly parallel with the East line of Lot 4 of said Subdivision, 50.5'; thence West a distance of 6 inches to the East line of said Lot 4 of said subdivision; thence South on the East line of said Lot 4 of said subdivision, 50.5' to the Point of Beginning.

**TRACT 2:**
Being a parcel of land located in Hot Springs, Garland County, Arkansas and being a part of Lot 2 of Whittington's Subdivision of Lot 12, Block 93 of the United States Hot Springs Reservation, as surveyed and platted by the United States Hot Springs Commissioners, said Parcel being the same land conveyed to Mrs. Ola Lambert by Warranty Deed No. (not numbered) recorded in Volume 259, Page 420 of the Warranty Deed records of Garland County, Hot Springs, Arkansas, and being more particularly described as follows:
BEGINNING at the Northwest corner of Lot 2 of Whittington's Subdivision of Lot 12, Block 93, of the United States Hot Springs Reservation: being S 42°30' E, a distance of 300.00 feet from the North corner of Block 93 of the United States Hot Springs Reservation; THENCE S 42°30' E with the South ROW line of Hazel Street a distance of 50.00 feet to an "X" in a brass capped monument set for corner in the North line of said Lot 2; THENCE S 47°23' W a distance of 157.20 feet to an "X" in a brass capped monument set for corner in the South line of Lot 2; THENCE N 56°37' E with the South line of Lot 2 a distance of 51.00 feet to the Southwest corner of Lot 2; same point being the Southeast corner of Lot 11, Block 93; THENCE N 47°13' E with the common line between Lots 2 and 11 a distance of 169.65 feet to the Point of Beginning. All bearings in this description are Magnetic and have a 6°30' deviation Easterly.

**ALSO:**
A Parcel of Land located in Hot Springs, Garland County, Arkansas and being Lot 11, Block 93 of the Hot Springs Reservation, as surveyed and platted by the United States Hot Springs Commissioners, SAVE AND EXCEPT a 6.00 feet by 100.00 feet perpetual right of way easement granted to the Standard Ice Company by Anne L. Midnight by deed recorded in Volume 158, Page 444, Records of Deeds and Mortgages of

Exhibit C

Loan No: ████7592

**MORTGAGE**
**(Continued)**

Book 4101 Page 0907

Page 2

===

Cameron County, Arkansas, said parcel being the same land conveyed to Karel A. Janota by Warranty Deed No. 10929, recorded in Volume 11, Page 650 of the Warranty Deed Records of Garland County, Hot Springs, Arkansas, and being more particularly described as follows:

BEGINNING at a point on the South ROW line of Hazel Street and the North line of Lot 11, Block 93 of the United States Hot Springs Reservation. The same point being the Northeast corner of a 6.00 feet by 100.00 feet perpetual easement granted to the Standard Ice Company and being South 42°30' East 206.00 feet from the North corner of Block 93 at the intersection of the South ROW line of Hazel Street and the East ROW line of Ouachita Avenue; THENCE South 42°30' East with the South ROW line of Hazel Street a distance of 94.00 feet to the Northeast corner of Lot 11, Block 93; same being the Northwest corner of Lot 2 of Whittington Subdivision of Lot 12, Block 93 of the United States Hot Springs Reservation; THENCE South 47°13' West with the common line between Lots 11 and 2 a distance of 169.65 feet to the Southeast corner of said Lot 11; THENCE North 56°37' West with the South line of Lot 11 a distance of 104.00 feet to an "X" in a brass capped monument set at the Southwest corner of Lot 11; THENCE North 47°30' East with the West line of said Lot 11 a distance of 95.00 feet to a point for corner;

said being the Southwest corner of a 6.00 feet by 100.00 feet perpetual easement; thence South 42°30' East with the South line of said Easement a distance of 6.00 feet to the Southeast corner of said Easement. Thence North 47°30' East with the East line of said Easement a distance of 100.00 feet to the Point of Beginning. All bearings in this description are Magnetic and have a 6°30' deviation Easterly.

ALSO:
A Parcel of Land located in Hot Springs, Garland County, Arkansas and being a part of Lot 11, Block 93 of the Hot Springs Reservation, as surveyed and platted by the United States Hot Springs Commissioners, and being more particularly described as follows: BEGINNING at an "X" in a brass capped concrete monument set in the South ROW line of Hazel Street, at the Northwest corner of Lot 11, Block 93 of the United States Hot Springs Reservation, same being the Northwest corner of this Parcel, and being S 42°30' E, at a distance of 200.00 feet from the North corner of Block 93 at the intersection of the South ROW line of Hazel Street with the East ROW line of Ouachita Avenue; THENCE S 42°30' E with the South ROW line of Hazel Street a distance of 6.00 feet to a point for corner; THENCE S 47°30' W a distance of 100.00 feet to a point for corner; THENCE N 42°30' W a distance of 6.00 feet to a point for corner in the West line of Lot 11, Block 93; THENCE N 47°30' E with the West line of said Lot 11 a distance of 100.00 feet to the Point of Beginning. All bearings in this description are Magnetic and have a 6°30' deviation Easterly.

**The Real Property or its address is commonly known as  505 W. Grand Avenue and 225 & 227 Hazel St., Hot Springs, AR  71901.**

**REVOLVING LINE OF CREDIT.**  This Mortgage secures the Indebtedness including, without limitation, a revolving line of credit, which obligates Lender to make advances to Grantor up to a maximum amount of $1,000,000.00 so long as Grantor complies with all the terms of the Note.

Grantor absolutely and presently assigns to Lender all of Grantor's right, title, and interest in and to all present and future leases of the Property and all Rents from the Property.  In addition, Grantor grants to Lender a Uniform Commercial Code security interest in the Personal Property and Rents.

**THIS MORTGAGE, INCLUDING THE ASSIGNMENT OF RENTS AND THE SECURITY INTEREST IN THE RENTS AND PERSONAL PROPERTY, IS GIVEN TO SECURE  (A)  PAYMENT OF THE INDEBTEDNESS AND  (B)  PERFORMANCE OF ANY AND ALL OBLIGATIONS UNDER THE NOTE, THE RELATED DOCUMENTS, AND THIS MORTGAGE.  THIS MORTGAGE IS GIVEN AND ACCEPTED ON THE FOLLOWING TERMS:**

**PAYMENT AND PERFORMANCE.**  Except as otherwise provided in this Mortgage, Grantor shall pay to Lender all amounts secured by this Mortgage as they become due and shall strictly perform all of Grantor's obligations under this Mortgage.

**POSSESSION AND MAINTENANCE OF THE PROPERTY.**  Grantor agrees that Grantor's possession and use of the Property shall be governed by the following provisions:

**Possession and Use.**  Until the occurrence of an Event of Default, Grantor may  (1)  remain in possession and control of the Property; (2)  use, operate or manage the Property; and  (3)  collect the Rents from the Property.

**Duty to Maintain.**  Grantor shall maintain the Property in tenantable condition and promptly perform all repairs, replacements, and maintenance necessary to preserve its value.

**Compliance With Environmental Laws.**  Grantor represents and warrants to Lender that:  (1)  During the period of Grantor's ownership of the Property, there has been no use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance by any person on, under, about or from the Property;  (2)  Grantor has no knowledge of, or reason to believe that there has been, except as previously disclosed to and acknowledged by Lender in writing,  (a)  any breach or violation of any Environmental Laws,  (b)  any use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance on, under, about or from the Property by any prior owners or occupants of the Property, or  (c)  any actual or threatened litigation or claims of any kind by any person relating to such matters; and  (3)  Except as previously disclosed to and acknowledged by Lender in writing,  (a)  neither Grantor nor any tenant, contractor, agent or other authorized user of the Property shall use, generate, manufacture, store, treat, dispose of or release any Hazardous Substance on, under, about or from the Property; and  (b)  any such activity shall be conducted in compliance with all applicable federal, state, and local laws, regulations and ordinances, including without limitation all Environmental Laws.  Grantor authorizes Lender and its agents to enter upon the Property to make such inspections and tests, at Grantor's expense, as Lender may deem appropriate to determine compliance of the Property with this section of the Mortgage.  Any inspections or tests made by Lender shall be for Lender's purposes only and shall not be construed to create any responsibility or liability on the part of Lender to Grantor or to any other person.  The representations and warranties contained herein are based on Grantor's due diligence in investigating the Property for Hazardous Substances.  Grantor

Exhibit C

Loan No: ████7592

**MORTGAGE**
**(Continued)**

Book 4101 Page 0908

Page 3

hereby (1) releases and waives any future claims against Lender for indemnity or contribution in the event Grantor becomes liable for cleanup or other costs under any such laws; and (2) agrees to indemnify, defend, and hold harmless Lender against any and all claims, losses, liabilities, damages, penalties, and expenses which Lender may directly or indirectly sustain or suffer resulting from a breach of this section of the Mortgage or as a consequence of any use, generation, manufacture, storage, disposal, release or threatened release occurring prior to Grantor's ownership or interest in the Property, whether or not the same was or should have been known to Grantor. The provisions of this section of the Mortgage, including the obligation to indemnify and defend, shall survive the payment of the Indebtedness and the satisfaction and reconveyance of the lien of this Mortgage and shall not be affected by Lender's acquisition of any interest in the Property, whether by foreclosure or otherwise.

**Nuisance, Waste.** Grantor shall not cause, conduct or permit any nuisance nor commit, permit, or suffer any stripping of or waste on or to the Property or any portion of the Property. Without limiting the generality of the foregoing, Grantor will not remove, or grant to any other party the right to remove, any timber, minerals (including oil and gas), coal, clay, scoria, soil, gravel or rock products without Lender's prior written consent.

**Removal of Improvements.** Grantor shall not demolish or remove any Improvements from the Real Property without Lender's prior written consent. As a condition to the removal of any Improvements, Lender may require Grantor to make arrangements satisfactory to Lender to replace such Improvements with Improvements of at least equal value.

**Lender's Right to Enter.** Lender and Lender's agents and representatives may enter upon the Real Property at all reasonable times to attend to Lender's interests and to inspect the Real Property for purposes of Grantor's compliance with the terms and conditions of this Mortgage.

**Compliance with Governmental Requirements.** Grantor shall promptly comply with all laws, ordinances, and regulations, now or hereafter in effect, of all governmental authorities applicable to the use or occupancy of the Property, including without limitation, the Americans With Disabilities Act. Grantor may contest in good faith any such law, ordinance, or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Grantor has notified Lender in writing prior to doing so and so long as, in Lender's sole opinion, Lender's interests in the Property are not jeopardized. Lender may require Grantor to post adequate security or a surety bond, reasonably satisfactory to Lender, to protect Lender's interest.

**Duty to Protect.** Grantor agrees neither to abandon or leave unattended the Property. Grantor shall do all other acts, in addition to those acts set forth above in this section, which from the character and use of the Property are reasonably necessary to protect and preserve the Property.

**DUE ON SALE - CONSENT BY LENDER.** Lender may, at Lender's option, declare immediately due and payable all sums secured by this Mortgage upon the sale or transfer, without Lender's prior written consent, of all or any part of the Real Property, or any interest in the Real Property. A "sale or transfer" means the conveyance of Real Property or any right, title or interest in the Real Property; whether legal, beneficial or equitable; whether voluntary or involuntary; whether by outright sale, deed, installment sale contract, land contract, contract for deed, leasehold interest with a term greater than three (3) years, lease-option contract, or by sale, assignment, or transfer of any beneficial interest in or to any land trust holding title to the Real Property, or by any other method of conveyance of an interest in the Real Property. If any Grantor is a corporation, partnership or limited liability company, transfer also includes any restructuring of the legal entity (whether by merger, division or otherwise) or any change in ownership of more than twenty-five percent (25%) of the voting stock, partnership interests or limited liability company interests, as the case may be, of such Grantor. However, this option shall not be exercised by Lender if such exercise is prohibited by federal law or by Arkansas law.

**TAXES AND LIENS.** The following provisions relating to the taxes and liens on the Property are part of this Mortgage:

**Payment.** Grantor shall pay when due (and in all events prior to delinquency) all taxes, payroll taxes, special taxes, assessments, water charges and sewer service charges levied against or on account of the Property, and shall pay when due all claims for work done on or for services rendered or material furnished to the Property. Grantor shall maintain the Property free of any liens having priority over or equal to the interest of Lender under this Mortgage, except for those liens specifically agreed to in writing by Lender, and except for the lien of taxes and assessments not due as further specified in the Right to Contest paragraph.

**Right to Contest.** Grantor may withhold payment of any tax, assessment, or claim in connection with a good faith dispute over the obligation to pay, so long as Lender's interest in the Property is not jeopardized. If a lien arises or is filed as a result of nonpayment, Grantor shall within fifteen (15) days after the lien arises or, if a lien is filed, within fifteen (15) days after Grantor has notice of the filing, secure the discharge of the lien, or if requested by Lender, deposit with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender in an amount sufficient to discharge the lien plus any costs and reasonable attorneys' fees, or other charges that could accrue as a result of a foreclosure or sale under the lien. In any contest, Grantor shall defend itself and Lender and shall satisfy any adverse judgment before enforcement against the Property. Grantor shall name Lender as an additional obligee under any surety bond furnished in the contest proceedings.

**Evidence of Payment.** Grantor shall upon demand furnish to Lender satisfactory evidence of payment of the taxes or assessments and shall authorize the appropriate governmental official to deliver to Lender at any time a written statement of the taxes and assessments against the Property.

**Notice of Construction.** Grantor shall notify Lender at least fifteen (15) days before any work is commenced, any services are furnished, or any materials are supplied to the Property, if any mechanic's lien, materialmen's lien, or other lien could be asserted on account of the work, services, or materials. Grantor will upon request of Lender furnish to Lender advance assurances satisfactory to Lender that Grantor can and will pay the cost of such improvements.

**PROPERTY DAMAGE INSURANCE.** The following provisions relating to insuring the Property are a part of this Mortgage:

**Maintenance of Insurance.** Grantor shall procure and maintain policies of fire insurance with standard extended coverage endorsements on a replacement basis for the full insurable value covering all Improvements on the Real Property in an amount sufficient to avoid application of any coinsurance clause, and with a standard mortgagee clause in favor of Lender. Grantor shall also procure and maintain comprehensive general liability insurance in such coverage amounts as Lender may request with Lender being named as additional insureds in such liability insurance policies. Additionally, Grantor shall maintain such other insurance, including

Exhibit C

Loan No: ███7592

**MORTGAGE
(Continued)**

Book 4101 Page 0909

Page 4

but not limited to hazard, business interruption and boiler insurance as Lender may require. Policies shall be written by such insurance companies and in such form as may be reasonably acceptable to Lender. Grantor shall deliver to Lender certificates of coverage from each insurer containing a stipulation that coverage will not be cancelled or diminished without a minimum of ten (10) days' prior written notice to Lender and not containing any disclaimer of the insurer's liability for failure to give such notice. Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Grantor or any other person. Should the Real Property be located in an area designated by the Administrator of the Federal Emergency Management Agency as a special flood hazard area, Grantor agrees to obtain and maintain flood insurance, if available, within 45 days after notice is given by Lender that the Property is located in a special flood hazard area, for the full unpaid principal balance of the loan and any prior liens on the property securing the loan, up to the maximum policy limits set under the National Flood Insurance Program, or as otherwise required by Lender, and to maintain such insurance for the term of the loan. Flood insurance may be purchased under the National Flood Insurance Program, from private insurers providing "private flood insurance" as defined by applicable federal flood insurance statutes and regulations, or from another flood insurance provider that is both acceptable to Lender in its sole discretion and permitted by applicable federal flood insurance statutes and regulations.

**Application of Proceeds.** Grantor shall promptly notify Lender of any loss or damage to the Property. Lender may make proof of loss if Grantor fails to do so within fifteen (15) days of the casualty. Whether or not Lender's security is impaired, Lender may, at Lender's election, receive and retain the proceeds of any insurance and apply the proceeds to the reduction of the Indebtedness, payment of any lien affecting the Property, or the restoration and repair of the Property. If Lender elects to apply the proceeds to restoration and repair, Grantor shall repair or replace the damaged or destroyed improvements in a manner satisfactory to Lender. Lender shall, upon satisfactory proof of such expenditure, pay or reimburse Grantor from the proceeds for the reasonable cost of repair or restoration if Grantor is not in default under this Mortgage. Any proceeds which have not been disbursed within 180 days after their receipt and which Lender has not committed to the repair or restoration of the Property shall be used first to pay any amount owing to Lender under this Mortgage, then to pay accrued interest, and the remainder, if any, shall be applied to the principal balance of the Indebtedness. If Lender holds any proceeds after payment in full of the Indebtedness, such proceeds shall be paid to Grantor as Grantor's interests may appear.

**Grantor's Report on Insurance.** Upon request of Lender, however not more than once a year, Grantor shall furnish to Lender a report on each existing policy of insurance showing: (1) the name of the insurer; (2) the risks insured; (3) the amount of the policy; (4) the property insured, the then current replacement value of such property, and the manner of determining that value; and (5) the expiration date of the policy. Grantor shall, upon request of Lender, have an independent appraiser satisfactory to Lender determine the cash value replacement cost of the Property.

**LENDER'S EXPENDITURES.** If any action or proceeding is commenced that would materially affect Lender's interest in the Property or if Grantor fails to comply with any provision of this Mortgage or any Related Documents, including but not limited to Grantor's failure to discharge or pay when due any amounts Grantor is required to discharge or pay under this Mortgage or any Related Documents, Lender on Grantor's behalf may (but shall not be obligated to) take any action that Lender deems appropriate, including but not limited to discharging or paying all taxes, liens, security interests, encumbrances and other claims, at any time levied or placed on the Property and paying all costs for insuring, maintaining and preserving the Property. All such expenditures incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Grantor. All such expenses will become a part of the Indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Note; or (C) be treated as a balloon payment which will be due and payable at the Note's maturity. The Mortgage also will secure payment of these amounts. Such right shall be in addition to all other rights and remedies to which Lender may be entitled upon the occurrence of any Event of Default.

**WARRANTY; DEFENSE OF TITLE.** The following provisions relating to ownership of the Property are a part of this Mortgage:

**Title.** Grantor warrants that: (a) Grantor holds good and marketable title of record to the Property in fee simple, free and clear of all liens and encumbrances other than those set forth in the Real Property description or in any title insurance policy, title report, or final title opinion issued in favor of, and accepted by, Lender in connection with this Mortgage, and (b) Grantor has the full right, power, and authority to execute and deliver this Mortgage to Lender.

**Defense of Title.** Subject to the exception in the paragraph above, Grantor warrants and will forever defend the title to the Property against the lawful claims of all persons. In the event any action or proceeding is commenced that questions Grantor's title or the interest of Lender under this Mortgage, Grantor shall defend the action at Grantor's expense. Grantor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of Lender's own choice, and Grantor will deliver, or cause to be delivered, to Lender such instruments as Lender may request from time to time to permit such participation.

**Compliance With Laws.** Grantor warrants that the Property and Grantor's use of the Property complies with all existing applicable laws, ordinances, and regulations of governmental authorities.

**Survival of Representations and Warranties.** All representations, warranties, and agreements made by Grantor in this Mortgage shall survive the execution and delivery of this Mortgage, shall be continuing in nature, and shall remain in full force and effect until such time as Grantor's Indebtedness shall be paid in full.

**CONDEMNATION.** The following provisions relating to condemnation proceedings are a part of this Mortgage:

**Proceedings.** If any proceeding in condemnation is filed, Grantor shall promptly notify Lender in writing, and Grantor shall promptly take such steps as may be necessary to defend the action and obtain the award. Grantor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of its own choice, and Grantor will deliver or cause to be delivered to Lender such instruments and documentation as may be requested by Lender from time to time to permit such participation.

**Application of Net Proceeds.** If all or any part of the Property is condemned by eminent domain proceedings or by any proceeding or purchase in lieu of condemnation, Lender may at its election require that all or any portion of the net proceeds of the award be applied

Exhibit C

**Loan No:** ████7592

**MORTGAGE**
**(Continued)**

Book 4101 Page 0910

Page 5

to the Indebtedness or the repair or restoration of the Property. The net proceeds of the award shall mean the award after payment of all reasonable costs, expenses, and attorneys' fees incurred by Lender in connection with the condemnation.

**IMPOSITION OF TAXES, FEES AND CHARGES BY GOVERNMENTAL AUTHORITIES.** The following provisions relating to governmental taxes, fees and charges are a part of this Mortgage:

**Current Taxes, Fees and Charges.** Upon request by Lender, Grantor shall execute such documents in addition to this Mortgage and take whatever other action is requested by Lender to perfect and continue Lender's lien on the Real Property. Grantor shall reimburse Lender for all taxes, as described below, together with all expenses incurred in recording, perfecting or continuing this Mortgage, including without limitation all taxes, fees, documentary stamps, and other charges for recording or registering this Mortgage.

**Taxes.** The following shall constitute taxes to which this section applies: (1) a specific tax upon this type of Mortgage or upon all or any part of the Indebtedness secured by this Mortgage; (2) a specific tax on Grantor which Grantor is authorized or required to deduct from payments on the Indebtedness secured by this type of Mortgage; (3) a tax on this type of Mortgage chargeable against the Lender or the holder of the Note; and (4) a specific tax on all or any portion of the Indebtedness or on payments of principal and interest made by Grantor.

**Subsequent Taxes.** If any tax to which this section applies is enacted subsequent to the date of this Mortgage, this event shall have the same effect as an Event of Default, and Lender may exercise any or all of its available remedies for an Event of Default as provided below unless Grantor either (1) pays the tax before it becomes delinquent, or (2) contests the tax as provided above in the Taxes and Liens section and deposits with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender.

**SECURITY AGREEMENT; FINANCING STATEMENTS.** The following provisions relating to this Mortgage as a security agreement are a part of this Mortgage:

**Security Agreement.** This instrument shall constitute a Security Agreement to the extent any of the Property constitutes fixtures, and Lender shall have all of the rights of a secured party under the Uniform Commercial Code as amended from time to time.

**Security Interest.** Upon request by Lender, Grantor shall take whatever action is requested by Lender to perfect and continue Lender's security interest in the Rents and Personal Property. In addition to recording this Mortgage in the real property records, Lender may, at any time and without further authorization from Grantor, file executed counterparts, copies or reproductions of this Mortgage as a financing statement. Grantor shall reimburse Lender for all expenses incurred in perfecting or continuing this security interest. Upon default, Grantor shall not remove, sever or detach the Personal Property from the Property. Upon default, Grantor shall assemble any Personal Property not affixed to the Property in a manner and at a place reasonably convenient to Grantor and Lender and make it available to Lender within three (3) days after receipt of written demand from Lender to the extent permitted by applicable law.

**Addresses.** The mailing addresses of Grantor (debtor) and Lender (secured party) from which information concerning the security interest granted by this Mortgage may be obtained (each as required by the Uniform Commercial Code) are as stated on the first page of this Mortgage.

**FURTHER ASSURANCES; ATTORNEY-IN-FACT.** The following provisions relating to further assurances and attorney-in-fact are a part of this Mortgage:

**Further Assurances.** At any time, and from time to time, upon request of Lender, Grantor will make, execute and deliver, or will cause to be made, executed or delivered, to Lender or to Lender's designee, and when requested by Lender, cause to be filed, recorded, refiled, or rerecorded, as the case may be, at such times and in such offices and places as Lender may deem appropriate, any and all such mortgages, deeds of trust, security deeds, security agreements, financing statements, continuation statements, instruments of further assurance, certificates, and other documents as may, in the sole opinion of Lender, be necessary or desirable in order to effectuate, complete, perfect, continue, or preserve (1) Grantor's obligations under the Note, this Mortgage, and the Related Documents, and (2) the liens and security interests created by this Mortgage on the Property, whether now owned or hereafter acquired by Grantor. Unless prohibited by law or Lender agrees to the contrary in writing, Grantor shall reimburse Lender for all costs and expenses incurred in connection with the matters referred to in this paragraph.

**Attorney-in-Fact.** If Grantor fails to do any of the things referred to in the preceding paragraph, Lender may do so for and in the name of Grantor and at Grantor's expense. For such purposes, Grantor hereby irrevocably appoints Lender as Grantor's attorney-in-fact for the purpose of making, executing, delivering, filing, recording, and doing all other things as may be necessary or desirable, in Lender's sole opinion, to accomplish the matters referred to in the preceding paragraph.

**FULL PERFORMANCE.** If Grantor pays all the Indebtedness when due, and otherwise performs all the obligations imposed upon Grantor under this Mortgage, Lender shall execute and deliver to Grantor a suitable satisfaction of this Mortgage and suitable statements of termination of any financing statement on file evidencing Lender's security interest in the Rents and the Personal Property. Grantor will pay, if permitted by applicable law, any reasonable termination fee as determined by Lender from time to time.

**EVENTS OF DEFAULT.** Each of the following, at Lender's option, shall constitute an Event of Default under this Mortgage:

**Payment Default.** Grantor fails to make any payment when due under the Indebtedness.

**Default on Other Payments.** Failure of Grantor within the time required by this Mortgage to make any payment for taxes or insurance, or any other payment necessary to prevent filing of or to effect discharge of any lien.

**Other Defaults.** Grantor fails to comply with or to perform any other term, obligation, covenant or condition contained in this Mortgage or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Grantor.

**Default in Favor of Third Parties.** Should Grantor default under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Grantor's property or Grantor's ability to repay the Indebtedness or Grantor's ability to perform Grantor's obligations under this Mortgage or any of the Related Documents.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Grantor or on Grantor's behalf under

Exhibit C

**MORTGAGE**
**(Continued)**

Book 4101 Page 0911

this Mortgage or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Defective Collateralization.** This Mortgage or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Insolvency.** The dissolution or termination of Grantor's existence as a going business, the insolvency of Grantor, the appointment of a receiver for any part of Grantor's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Grantor.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Grantor or by any governmental agency against any property securing the Indebtedness. This includes a garnishment of any of Grantor's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Grantor as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Grantor gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Breach of Other Agreement.** Any breach by Grantor under the terms of any other agreement between Grantor and Lender that is not remedied within any grace period provided therein, including without limitation any agreement concerning any indebtedness or other obligation of Grantor to Lender, whether existing now or later.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party of any of the Indebtedness or any guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness.

**Adverse Change.** A material adverse change occurs in Grantor's financial condition, or Lender believes the prospect of payment or performance of the Indebtedness is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**RIGHTS AND REMEDIES ON DEFAULT.** Upon the occurrence of an Event of Default and at any time thereafter, Lender, at Lender's option, may exercise any one or more of the following rights and remedies, in addition to any other rights or remedies provided by law:

**Accelerate Indebtedness.** Lender shall have the right at its option without notice to Grantor to declare the entire Indebtedness immediately due and payable, including any prepayment penalty that Grantor would be required to pay.

**UCC Remedies.** With respect to all or any part of the Personal Property, Lender shall have all the rights and remedies of a secured party under the Uniform Commercial Code.

**Collect Rents.** Lender shall have the right, without notice to Grantor, to take possession of the Property and collect the Rents, including amounts past due and unpaid, and apply the net proceeds, over and above Lender's costs, against the Indebtedness. In furtherance of this right, Lender may require any tenant or other user of the Property to make payments of rent or use fees directly to Lender. If the Rents are collected by Lender, then Grantor irrevocably designates Lender as Grantor's attorney-in-fact to endorse instruments received in payment thereof in the name of Grantor and to negotiate the same and collect the proceeds. Payments by tenants or other users to Lender in response to Lender's demand shall satisfy the obligations for which the payments are made, whether or not any proper grounds for the demand existed. Lender may exercise its rights under this subparagraph either in person, by agent, or through a receiver.

**Appoint Receiver.** Lender shall have the right to have a receiver appointed to take possession of all or any part of the Property, with the power to protect and preserve the Property, to operate the Property preceding foreclosure or sale, and to collect the Rents from the Property and apply the proceeds, over and above the cost of the receivership, against the Indebtedness. The receiver may serve without bond if permitted by law. Lender's right to the appointment of a receiver shall exist whether or not the apparent value of the Property exceeds the Indebtedness by a substantial amount. Employment by Lender shall not disqualify a person from serving as a receiver.

**Judicial Foreclosure.** Lender may obtain a judicial decree foreclosing Grantor's interest in all or any part of the Property.

**Nonjudicial Sale.** If permitted by applicable law, Lender may foreclose Grantor's interest in all or in any part of the Personal Property or the Real Property by non-judicial sale.

**Deficiency Judgment.** If permitted by applicable law, Lender may obtain a judgment for any deficiency remaining in the Indebtedness due to Lender after application of all amounts received from the exercise of the rights provided in this section.

**Tenancy at Sufferance.** If Grantor remains in possession of the Property after the Property is sold as provided above or Lender otherwise becomes entitled to possession of the Property upon default of Grantor, Grantor shall become a tenant at sufferance of Lender or the purchaser of the Property and shall, at Lender's option, either (1) pay a reasonable rental for the use of the Property, or (2) vacate the Property immediately upon the demand of Lender.

**Other Remedies.** Lender shall have all other rights and remedies provided in this Mortgage or the Note or available at law or in equity.

**Sale of the Property.** To the extent permitted by applicable law, Grantor hereby waives any and all right to have the Property marshalled. In exercising its rights and remedies, Lender shall be free to sell all or any part of the Property together or separately, in one sale or by separate sales. Lender shall be entitled to bid at any public sale on all or any portion of the Property.

**Notice of Sale.** Lender shall give Grantor reasonable notice of the time and place of any public sale of the Personal Property or of the time after which any private sale or other intended disposition of the Personal Property is to be made. Reasonable notice shall mean notice given at least ten (10) days before the time of the sale or disposition. Any sale of the Personal Property may be made in conjunction with any sale of the Real Property.

**Election of Remedies.** Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make

Exhibit C

Loan No: ████7592

**MORTGAGE**
**(Continued)**

Book 4101 Page 0912

Page 7

expenditures or to take action to perform an obligation of Grantor under this Mortgage, after Grantor's failure to perform, shall not affect Lender's right to declare a default and exercise its remedies. Nothing under this Mortgage or otherwise shall be construed so as to limit or restrict the rights and remedies available to Lender following an Event of Default, or in any way to limit or restrict the rights and ability of Lender to proceed directly against Grantor and/or against any other co-maker, guarantor, surety or endorser and/or to proceed against any other collateral directly or indirectly securing the Indebtedness.

**Attorneys' Fees; Expenses.** If Lender institutes any suit or action to enforce any of the terms of this Mortgage, Lender shall be entitled to recover such sum as the court may adjudge reasonable as attorneys' fees at trial and upon any appeal. Whether or not any court action is involved, and to the extent not prohibited by law, all reasonable expenses Lender incurs that in Lender's opinion are necessary at any time for the protection of its interest or the enforcement of its rights shall become a part of the Indebtedness payable on demand and shall bear interest at the Note rate from the date of the expenditure until repaid. Expenses covered by this paragraph include, without limitation, however subject to any limits under applicable law, Lender's reasonable attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including reasonable attorneys' fees and expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services, the cost of searching records, obtaining title reports (including foreclosure reports), surveyors' reports, and appraisal fees and title insurance, to the extent permitted by applicable law. Grantor also will pay any court costs, in addition to all other sums provided by law.

**NOTICES.** Any notice required to be given under this Mortgage, including without limitation any notice of default and any notice of sale shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Mortgage. All copies of notices of foreclosure from the holder of any lien which has priority over this Mortgage shall be sent to Lender's address, as shown near the beginning of this Mortgage. Any party may change its address for notices under this Mortgage by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Grantor agrees to keep Lender informed at all times of Grantor's current address. Unless otherwise provided or required by law, if there is more than one Grantor, any notice given by Lender to any Grantor is deemed to be notice given to all Grantors.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Mortgage:

**Amendments.** This Mortgage, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Mortgage. No alteration of or amendment to this Mortgage shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Annual Reports.** If the Property is used for purposes other than Grantor's residence, Grantor shall furnish to Lender, upon request, a certified statement of net operating income received from the Property during Grantor's previous fiscal year in such form and detail as Lender shall require. "Net operating income" shall mean all cash receipts from the Property less all cash expenditures made in connection with the operation of the Property.

**Caption Headings.** Caption headings in this Mortgage are for convenience purposes only and are not to be used to interpret or define the provisions of this Mortgage.

**Governing Law. This Mortgage will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Arkansas without regard to its conflicts of law provisions. This Mortgage has been accepted by Lender in the State of Arkansas.**

**Choice of Venue.** If there is a lawsuit, Grantor agrees upon Lender's request to submit to the jurisdiction of the courts of Hot Spring County, State of Arkansas.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Mortgage unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Mortgage shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Mortgage. No prior waiver by Lender, nor any course of dealing between Lender and Grantor, shall constitute a waiver of any of Lender's rights or of any of Grantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Mortgage, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Severability.** If a court of competent jurisdiction finds any provision of this Mortgage to be illegal, invalid, or unenforceable as to any circumstance, that finding shall not make the offending provision illegal, invalid, or unenforceable as to any other circumstance. If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable. If the offending provision cannot be so modified, it shall be considered deleted from this Mortgage. Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Mortgage shall not affect the legality, validity or enforceability of any other provision of this Mortgage.

**Merger.** There shall be no merger of the interest or estate created by this Mortgage with any other interest or estate in the Property at any time held by or for the benefit of Lender in any capacity, without the written consent of Lender.

**Successors and Assigns.** Subject to any limitations stated in this Mortgage on transfer of Grantor's interest, this Mortgage shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Property becomes vested in a person other than Grantor, Lender, without notice to Grantor, may deal with Grantor's successors with reference to this Mortgage and the Indebtedness by way of forbearance or extension without releasing Grantor from the obligations of this Mortgage or liability under the Indebtedness.

**Time is of the Essence.** Time is of the essence in the performance of this Mortgage.

**Waive Jury. All parties to this Mortgage hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by any party against any other party.**

Exhibit C

**MORTGAGE**
**(Continued)**

Book 4101 Page 0913

Loan No: ▮▮▮7592

Page 8

---

**Waiver of Homestead Exemption and Other Rights.** Grantor hereby releases and waives all rights and benefits of the homestead exemption laws of the State of Arkansas as to all indebtedness secured by this Mortgage, waives all rights of appraisement, sale and redemption under the laws of Arkansas, including the Act of the General Assembly of Arkansas dated May 8, 1899 and Acts amendatory thereof, and, if applicable, waives all claims of dower or curtesy.

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Mortgage. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Mortgage shall have the meanings attributed to such terms in the Uniform Commercial Code:

**Borrower.** The word "Borrower" means Quapaw House, Inc. and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**Environmental Laws.** The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., or other applicable state or federal laws, rules, or regulations adopted pursuant thereto.

**Event of Default.** The words "Event of Default" mean any of the events of default set forth in this Mortgage in the events of default section of this Mortgage.

**Grantor.** The word "Grantor" means Quapaw House, Inc..

**Guaranty.** The word "Guaranty" means the guaranty from guarantor, endorser, surety, or accommodation party to Lender, including without limitation a guaranty of all or part of the Note.

**Hazardous Substances.** The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws. The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos.

**Improvements.** The word "Improvements" means all existing and future improvements, buildings, structures, mobile homes affixed on the Real Property, facilities, additions, replacements and other construction on the Real Property.

**Indebtedness.** The word "Indebtedness" means all principal, interest, and other amounts, costs and expenses payable under the Note or Related Documents, together with all renewals of, extensions of, modifications of, consolidations of and substitutions for the Note or Related Documents and any amounts expended or advanced by Lender to discharge Grantor's obligations or expenses incurred by Lender to enforce Grantor's obligations under this Mortgage, together with interest on such amounts as provided in this Mortgage.

**Lender.** The word "Lender" means Malvern National Bank, its successors and assigns.

**Mortgage.** The word "Mortgage" means this Mortgage between Grantor and Lender.

**Note.** The word "Note" means the promissory note dated October 25, 2019, **in the original principal amount of $1,000,000.00** from Grantor to Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the promissory note or agreement. The maturity date of the Note is December 25, 2020. **NOTICE TO GRANTOR: THE NOTE CONTAINS A VARIABLE INTEREST RATE.**

**Personal Property.** The words "Personal Property" mean all equipment, fixtures, and other articles of personal property now or hereafter owned by Grantor, and now or hereafter attached or affixed to the Real Property; together with all accessions, parts, and additions to, all replacements of, and all substitutions for, any of such property; and together with all proceeds (including without limitation all insurance proceeds and refunds of premiums) from any sale or other disposition of the Property.

**Property.** The word "Property" means collectively the Real Property and the Personal Property.

**Real Property.** The words "Real Property" mean the real property, interests and rights, as further described in this Mortgage.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

**Rents.** The word "Rents" means all present and future rents, revenues, income, issues, royalties, profits, and other benefits derived from the Property.

Exhibit C

Loan No: ████7592

**MORTGAGE**
**(Continued)**

Book 4101 Page 0914

Page 9

GRANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS MORTGAGE, AND GRANTOR AGREES TO ITS TERMS.

GRANTOR:

QUAPAW HOUSE, INC.

By: _Pat Parker_

Pat Parker, Board President of Quapaw House, Inc.

## CORPORATE ACKNOWLEDGMENT

STATE OF ___Arkansas___        )
                                ) SS
COUNTY OF ___Saline___          )

On this ___25th___ day of ___October___, 20 _19_, before me, ___Amber Accardo___ a Notary Public, (or before any officer within this State or without the State now qualified under existing law to take acknowledgments), duly commissioned, qualified and acting, within and for said County and State, appeared in person the within named **Pat Parker,** (being the person or persons authorized by said corporation to execute such instrument, stating their respective capacities in that behalf), to me personally well known (or satisfactorily proven to be such person), who stated that he or she was the **Board President of Quapaw House, Inc., a corporation,** and was duly authorized in his or her respective capacity to execute the foregoing instrument(s) for and in the name and behalf of said corporation, and further stated and acknowledged that he or she had so signed, executed, and delivered said foregoing instrument for the consideration, uses, and purposes therein mentioned and set forth.

IN TESTIMONY WHEREOF, I have hereunto set my hand and official seal this ___25th___ day of ___October___ , 20 _19_ .

By ___Amber Noel Accardo___

Notary Public in and for the State of ___Arkansas___

Residing at ___Saline County___

My commission expires ___Sept. 14, 2028___

AMBER NOEL ACCARDO
NOTARY
PUBLIC
#12705179
Expires 09.14.28
SALINE COUNTY AR

Garland County, AR
I certify this instrument was
filed on 11/05/2019 1:42PM
and recorded in DEED Book
4101 at pages 0906 - 0914
Jeannie Pike - Circuit Clerk

Exhibit C



**DEPARTMENT OF HEALTH & HUMAN SERVICES**

Program Support Center
Rockville MD 20857

June 22, 2020

<u>Transmitted via Email and USPS Certified Mail</u>

Mr. Casey Bright, CEO
Quapaw House, Inc.
505 West Grand Avenue
Hot Springs, Arkansas 71901

Mr. Patrick McCabe
President and CEO
Levi Hospital
300 Prospect Avenue
Hot Springs, Arkansas 71901

Re:    SSA Federal Building
       225 Hazel Street
       Hot Springs, Arkansas
       07-AR-2251        7-G-AR-0560

Dear Mr. Bright and Mr. McCabe:

By letter dated June 3, 2020, the United States Department of Health and Human Services notified Quapaw House, Inc. (grantee) that it was noncompliant with Quitclaim Deed (Deed) condition subsequent number 1 for failing to utilize the property in accordance with the approved program of use.  We have also become aware of encumbrances on the property that were not approved by HHS, and therefore, the grantee is in noncompliance with Deed condition subsequent number 2.  Based on the foregoing, and in accordance with the terms and conditions of the aforementioned Deed, we are exercising our right of reverter.  You are hereby notified that the above-referenced property is being returned to the United States of America.

Enclosed is a copy of the Notice of Reverter which is being filed with the Office of the Garland County Recorder, State of Arkansas.  Please remove all unauthorized equipment and/or structures from the property.  You are advised that the grantee is responsible for protection and maintenance of the property until the property is accepted by the U.S. General Services Administration.

Exhibit D

We regret that this action of reversion has become necessary.  Should you have any questions regarding this notice, please contact me on (202) 823-1348.

Sincerely,

**Theresa M. Ritta -S**

Digitally signed by Theresa M. Ritta -S
DN: c=US, o=U.S. Government, ou=HHS, ou=PSC, ou=People, 0.9.2342.19200300.100.1.1=20000 03750, cn=Theresa M. Ritta -S
Date: 2020.06.22 15:39:29 -04'00'

Theresa Ritta, Program Manager
Real Property Management Services
Program Support Center

Enclosure

Cc:  Melvin Freeman, GSA
        Jennifer Mollenshott, GSA

Exhibit D